225 N.J. Super. 576 (1988)
543 A.2d 95
JAMIE DERRICOTT SCAFIDI, AND ANTHONY SCAFIDI, INDIVIDUALLY AS ADMINISTRATORS AD PROSEQUENDUM AND GENERAL ADMINISTRATORS FOR THE ESTATE OF DANIELLE SCAFIDI, DECEASED, PLAINTIFFS-APPELLANTS,
v.
F.U. SEILER, M.D., DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued May 3, 1988.
Decided June 14, 1988.
*577 Before Judges R.S. COHEN and LANDAU.
Benjamin N. Cittadino argued the cause for appellants (Devlin, Cittadino & Shaw and Pellettieri, Rabstein & Altman, attorneys; Benjamin N. Cittadino and E. Elizabeth Sweetser, of counsel and on the brief).
Richard A. Grossman argued the cause for respondents (Grossman & Kruttschnitt, attorneys; Richard A. Grossman, *578 of counsel, Richard A. Grossman and Thomas J. Heavey, on the brief).
The opinion of the court was delivered by COHEN, R.S., J.A.D.
This is a medical malpractice case. The complaint asserted that defendant's deficient care was responsible for the premature birth and resulting death of a newborn infant. Recovery was sought for both lifetime damages and wrongful death. The jury found that defendant was negligent, but also concluded that his negligence was not the proximate cause of the lifetime damages or the death of the infant. Plaintiffs appealed, asserting that the court erroneously instructed the jury on the issue of causation. We agree and therefore reverse.
Plaintiff Jamie Scafidi had a difficult pregnancy, including two brief hospitalizations. On July 7, 1982, when she was about seven months pregnant, she visited her obstetrician, Dr. Franzoni, complaining of heavy bleeding. He sent her home to bed, said there was a danger of premature labor, told her to call with any problems and warned her she was "sitting on a time bomb." Later that day, Jamie experienced cramping and called Dr. Franzoni, but he was unavailable. She spoke to his associate, defendant Dr. Seiler, who was covering. She related her difficulties and told him what Dr. Franzoni had advised her to do. She said she was not then bleeding and her cramps were irregular. He told her she had an irritable uterus and prescribed orally administered medicine to "calm it down." He advised her to keep a prearranged appointment the next morning with Dr. Franzoni. The medicine prescribed by defendant, when taken orally, is ineffective as tocolytic therapy, whose goal is to arrest premature labor.
Next morning, still suffering from cramping, Jamie went to see Dr. Franzoni. After discovering that she was dilated three centimeters, he sent her to the hospital. There, unsuccessful efforts were made to arrest labor. The baby was born at 28 *579 weeks weighing two pounds, six ounces, and died two days later of Respiratory Distress Syndrome, a condition peculiar to preterm infants.
On behalf of plaintiffs, Dr. Marshall Klavan testified that defendant deviated from accepted standards of practice by not immediately hospitalizing Jamie to evaluate whether she was having labor pains, and, if so, to begin tocolytic therapy to halt the premature labor. Effective tocolytic therapy, he said, involved intravenous medication and thus required hospitalization. The medicine defendant prescribed for oral administration was ineffective for the purpose. Defendant's deviation, according to Dr. Klavan, "directly related to the premature birth" of the infant and thus to her death from prematurity. According to Dr. Klavan, timely tocolytic therapy available in 1982 was 75 to 80% successful in halting preterm labor.
Dr. Richard Berman testified for defendant. In addition to supporting the care afforded Jamie by defendant, Dr. Berman said that hospitalization and tocolysis on the evening Jamie telephoned defendant would not have changed the outcome in any way. He believed the labor would have gone to delivery no matter what defendant did. In his view only 25% of women will respond to tocolysis, and nobody could tell if Jamie's labor would have ceased if she had received earlier tocolytic therapy. Dr. Berman was asked if it was not true that the longer the delay in appropriate tocolytic therapy, "the more there is a substantial increase in the risk that the baby will be born prematurely." He first responded that he agreed with the concept, "but there is something wrong with it." He explained that determining whether to institute tocolysis "is the biggest problem." Ultimately, he stated:
And I think that retrospectively the sooner it had been started the better it would have been for her. But I can't say more than that.
Plaintiff requested that the court charge the jury as to causation in accordance with Evers v. Dollinger, 95 N.J. 399 (1984). The court declined to do so because it believed that *580 "this is not an Evers case." The instruction requested by plaintiff was:
Once the plaintiffs in this case have produced evidence of a negligent act or failure to act which increased the risk that plaintiffs' child would be born prematurely and thereafter die of the complications of that premature birth, and that the premature birth and consequent death of the child in fact occurred, you will then consider whether such increased risk was a substantial factor in that result. If you so find, you will proceed to a calculation of damages.
A plaintiff seeking to recover for another's negligence must prove that the negligence was a proximate cause of plaintiff's injuries. Catto v. Schnepp, 121 N.J. Super. 506, 511 (App.Div.), aff'd o.b. 62 N.J. 20 (1972). Plaintiff has the burden of proving by competent, credible evidence that the negligent conduct was a substantial contributing factor in causing the loss. Skripek v. Bergamo, 200 N.J. Super. 620, 634 (App.Div.), certif. den. 102 N.J. 303 (1985); Lamb v. Barbour, 188 N.J. Super. 6, 12 (App.Div. 1982), certif. den. 93 N.J. 297 (1983). Traditionally, courts have held that, if the loss would have occurred in the absence of defendant's negligence, it is not regarded as the cause of the loss. Kulas v. Public Service Elec. & Gas Co., 41 N.J. 311, 317 (1964).
When a patient is on a downward course, and defendant physician negligently fails to intervene, traditional proximate causation doctrine denies recovery unless the evidence shows that the patient's chance of a better outcome was greater than 50-50 absent malpractice. See generally Annotation, "Medical Malpractice, `loss of chance' causality," 54 A.L.R.4th 10 (1987). Many modern cases liberalize the standard in view of the practical difficulties of meeting it. One of them is Evers v. Dollinger. There, the Law Division excluded expert testimony in a medical malpractice case in which plaintiff alleged that negligent failure to diagnose her breast cancer for a period of seven months caused physical and emotional injury and enhanced the risk that cancer would recur after plaintiff's mastectomy. Plaintiff's medical expert was prepared to testify that 25% of people with plaintiff's kind of breast cancer experience a recurrence, and when there is a seven month delay in diagnosis, *581 there is "more of a chance" that a patient would be in the 25% group. Another physician was prepared to testify for plaintiff, according to his written report, that the chances of "a distant spread" of the cancer was increased in an unquantifiable amount by the delay in diagnosis. During trial colloquy, plaintiff's counsel said the physician would testify that the delay in diagnosis would make recurrence probable. That proposed testimony was outlawed by the court because it was not fairly forecast by the physician's written report.[1]
The Law Division ruled that the rest of the proposed testimony was insufficient to show that any damages flowed from defendant's conduct. It thus granted defendant's motion for judgment. The Supreme Court reversed. It reasoned that the difficulties of identifying, defining and proving injury in some malpractice cases justify the use of a "standard of causation that is more flexible than that used in conventional tort claims." Evers, supra, 95 N.J. at 413. The Court relied on Restatement (Second) of Torts, § 323(a) (1965)[2] and a series of Pennsylvania cases which started with Hamil v. Bashline, 481 Pa. 256, 392 A.2d 1280 (1978). There, plaintiff's decedent received negligent treatment in a hospital emergency room during a heart attack. Plaintiff's expert said that with proper treatment chances of survival were 75%. Defendant's expert said plaintiff would have died regardless of the treatment given him. The Pennsylvania Supreme Court ruled that, when there is evidence that defendant's negligence increased the risk of harm to plaintiff and that the harm was in fact sustained, it becomes a jury question whether or not that increased risk was a substantial factor in producing the harm. 481 Pa. at 269, 392 A.2d at 1286.
The Supreme Court adopted this rule for medical malpractice cases in which defendant is charged with having failed in a duty *582 to protect against harm from another source. 95 N.J. at 415. On remand, the Court said,
... plaintiff should be permitted to demonstrate, within a reasonable degree of medical probability, that the seven months delay resulting from defendant's failure to have made an accurate diagnosis and to have rendered proper treatment increased the risk of recurrence or of distant spread of plaintiff's cancer, and that such increased risk was a substantial factor in producing the condition from which plaintiff currently suffers. [95 N.J. at 417].
In the present case, like Evers and Hamil, there was a downward medical course and an effort, allegedly negligent, to reverse or ameliorate it. In those circumstances, proof that the risk of harm was increased by negligent treatment is sufficient to create a jury question whether the increased risk was a substantial factor in producing the ultimate result. If it was a substantial factor, plaintiff is entitled to recover.
Defendant argues that the Evers doctrine does not apply here. First, he contends that, since plaintiffs' proofs met traditional "but for" standards (75-80% success halting preterm labor by timely tocolytic therapy), plaintiff was not entitled to the more flexible Evers standard. Not so. If a plaintiff's expert says he is "absolutely certain" defendant was negligent, plaintiff's burden of proof of negligence is not raised to meet the unnecessary assertion of absolute certainty. So here the otherwise appropriate Evers standard is applied even though plaintiffs' witness may attempt to exceed it. We note in this regard that in Hamil v. Bashline plaintiff's expert estimated a 75% chance of survival absent malpractice, and his estimate was no impediment to the use of the flexible standard which it adopted and passed on to Evers. We hold that the flexible Evers standard applies to all medical malpractice cases in which there is evidence that defendant's negligence increased the risk of the occurrence of the ultimate eventuating harm by failing to arrest plaintiff's downward medical course. In such cases, it is a jury question whether the increased risk resulting from defendant's negligence was a substantial factor in producing the ultimate harm. The rule applies even if plaintiff's case includes evidence which would satisfy a higher standard.
*583 Defendant also argues that an Evers charge delivered in conjunction with the traditional "but for" proximate cause charge would confuse the jury. We agree. The solution to the problem, however, is not to omit the appropriate Evers charge, but to omit the "but for" charge, which describes an inapplicable standard. See Jones v. Montefiore Hospital, 494 Pa. 410, 431 A.2d 920 (1981); Aasheim v. Humberger, 695 P.2d 824, 827-828 (Mont. 1985); cf. DeBurkarte v. Louvar, 393 N.W.2d 131 (Iowa 1986).[3] Arizona has held that the Bashline  Evers rule should not be the subject of jury instructions at all. Thompson v. Sun City Community Hosp., Inc., 141 Ariz. 597, 688 P.2d 605, 616 (1984). Contra, Jones v. Montefiore Hospital, 494 Pa. 410, 431 A.2d 920 (1981). In our view a jury will be better able to function in an informed way with the help of instructions to focus attention on the issue of increased risk as a causative factor. For that reason we hold that the jury in an Evers case should be instructed to the effect that if defendant's negligence increased the risk of the ultimate harm which ensued, above the level of risk that would have resulted from non-negligent treatment, it is a question for the jury whether the increased risk was a substantial factor in producing that harm.
Defendant also argues that this case differs from Evers and Hamil because here the harm (premature birth and resulting death) was not "recognized universally as flowing from the delay in appropriate treatment." The difference was not of consequence to those cases and is not significant here. The force or clarity of plaintiffs' proofs is a matter for the jury and not for evaluation of the jury instructions.
*584 Plaintiff also argues on appeal that the court was required by Fosgate v. Corona, 66 N.J. 268 (1974) to instruct the jury that defendant had the burden of proof as to damages, since defendant did not cause the condition that led to the infant's death but rather aggravated it. The trial court properly refused to so charge. Fosgate treats the situation in which a physician's negligence worsens a preexisting disease or condition, and relieves the patient of the burden to prove what damages arose out of the negligence. Since it can be very difficult to separate those damages from those attributable to the underlying disease or condition, the culpable physician is held responsible for all damages except the portion he can prove arose from the disease or condition. In the present case, defendant did not exacerbate Jamie Scafidi's condition. He failed to intervene effectively to alter her medical course which was independently progressing toward premature birth and resulting death of the newborn infant. The apportionment problem dealt with in Fosgate v. Corona does not exist here.
Reversed and remanded for a new trial.
NOTES
[1] The Supreme Court did not rule on the correctness of that decision.
[2] Contra, see Curry v. Summer, 136 Ill. App.3d 468, 91 Ill.Dec. 365, 483 N.E.2d 711 (1985).
[3] We do not have to deal with the problems that would be created if the law permitted a reduced level of "enhanced risk" damages where ultimate harm has not eventuated. See Ayres v. Jackson Tp., 106 N.J. 557, 597-599 (1987). Cf. DeBurkarte v. Louvar, supra. See also Devlin v. Johns-Manville Corp., 202 N.J. Super. 556, 564-565 (Law Div. 1985); Herber v. Johns-Manville Corp., 785 F.2d 79, 82-83 (3 Cir.1986).