[No. A049126. First Dist., Div. One. July 31, 1991.]

WALLACE J. BROWN, Plaintiff and Appellant, v.
CALIFORNIA STATE LOTTERY COMMISSION et al., Defendants and
Respondents.

## COUNSEL

Kubota, Constantino & Hartnett and Noell K. Kubota for Plaintiff and Appellant.

John K. Van de Kamp and Daniel E. Lungren, Attorneys General, Richard G. Tullis, Deputy Attorney General, Bartko, Welsh, Tarrant & Miller, Charles G. Miller and Howard L. Pearlman for Defendants and Respondents.

## OPINION

**STEIN, J.**—Wallace J. Brown appeals from a judgment of dismissal following the sustaining of a demurrer without leave to amend.

Appellant alleged in his complaint that he went to a 7-Eleven store to purchase two California Lottery tickets. The store clerk informed him that the terminal was not functioning properly and that only tickets with terminal-generated number selections could be purchased. The clerk suggested Brown travel to another store nearby, but he was unable to get there in time. Brown claims that the failure of the clerk to sell him the lottery tickets resulted in a loss to him of approximately $7.25 million because he would have picked the winning numbers.

Brown sued the California State Lottery Commission (State), the Southland Corporation (doing business as 7-Eleven Stores), and the 7-Eleven clerk seeking damages on three theories: (1) breach of contract; (2) breach of contract to a third party beneficiary; and (3) negligence.

The superior court sustained the demurrers of Southland and the State of California to Brown's first amended complaint without leave to amend.

DISCUSSION

I.

NO CAUSE OF ACTION HAS BEEN STATED AGAINST SOUTHLAND

 Brown claims to have been "enticed by defendant's offer of a . . . 'short-cut to millions' " to enter into a unilateral contract by accepting its offer to buy two lottery tickets. Brown manifested his acceptance by tendering his play slips and sufficient money to the 7-Eleven clerk.[1]

The very structure of the lottery precludes the kind of contract formation that Brown alleges. The California State Lottery Act of 1984 (Gov. Code, § 8880, et seq.), (hereafter the Lottory Act) authorized the creation of a statewide parimutuel wagering system. Under the parimutuel system, the State accepts wagers through its agents and holds the proceeds in a pool. The Lottery Act sets forth a protocol which determines the division of revenues according to a percentage basis. This scheme was described in *Mattson* v. *Hollywood Turf Club* (1950) 101 Cal.App.2d 215 [225 P.2d 276] in the context of a parimutuel pool operated for horse racing. The court wrote: "A licensed track sells tickets and acts as custodian of the funds, which are accumulated in pools for win, place and show; the track takes the share of its partner, the state, and its own share, from the top, and divides what is left in the several pools among the holders of winning tickets." (*Id.* at p. 219.) Parimutuel operations like the lottery do not contract with bettors; instead they serve only as stakeholders for the wagers with no interest in the outcome.

A bet does not create a wagering contract between the bettor and the operator of a parimutuel pool. (*Hochberg* v. *New York City Off-Track Bet. Corp.* (1973) 74 Misc.2d 471 [343 N.Y.S.2d 651, 657].) No contract agreement or bet exists between the bettor and the operator of the pool. "The

---

[1] " 'Mutual consent is necessary to the existence of any contract, and one cannot be made to stand on a contract to which he never consented.' " (*Frederickson & Watson Constr. Co.* v. *Dept. Pub. Wks.* (1972) 28 Cal.App.3d 514, 518 [104 Cal.Rptr. 421].) "The manifestation of mutual assent to an exchange ordinarily takes the form of an offer or proposal by one party followed by an acceptance by the other party." (Rest.2d Contracts, § 22.) The successful formation of a contract requires an offer and acceptance. We note, however, that advertisements ordinarily are not offers but merely invitations to bargain. (*Harris* v. *Time, Inc.* (1987) 191 Cal.App.3d 449, 455 [237 Cal.Rptr. 584].) Thus, commercial solicitations by the State constituted nothing more than an invitation to wager, and in all probability to lose one's money.

transaction is between the participants in the pari-mutuel pools, the odds and terms thereof being determined by the participants according to the amount of their payments into the pool." (*Holberg* v. *Westchester Racing Ass'n* (1945) 184 Misc. 581 [53 N.Y.S.2d 490, 493].)

The bettor not only lacks a contractual right as to the stakeholder of the pool, but also possesses no enforceable right as to the other participants, absent a winning ticket. ■ The right to a winning share accrues solely from possession of a winning ticket, not from the mere purchase of a ticket. (*Hochberg* v. *New York City Off-Track Bet. Corp.*, *supra*, 343 N.Y.S.2d at p. 655; see *Valois* v. *Gulfstream Park Racing Ass'n* (Fla.App. 1982) 412 So.2d 959; *Seder* v. *Arlington Park Race Track Corp.* (1985) 134 Ill.App.3d 512 [481 N.E.2d 9]; *Bourgeois* v. *Fairground Corp.* (La.App. 1985) 480 So.2d 408.)

■ Brown, acknowledging that he has no right to the specific pool which accrued prior to the drawing, claims instead that respondents' misinformation prevented him from participating in the lottery and thereby entitles him to damages equivalent to the value of the pool on that date. The case law discussed above focuses on the moment when rights accrue precisely so as to foreclose the development of spurious theories by out-of-luck gamblers, not to mention silencing the specter of fraud. An individual either has or has not a ticket. Since a bona fide purchaser has no contractual relationship with the stakeholder, neither the stakeholder nor its agents may stand accused of committing a breach of contract by failing to sell a ticket.

■ Brown also argues that Southland and the State entered into a written contract to sell lottery tickets to the public, that the contract was intended to benefit members of the public, and that he therefore has a claim against Southland as a third party beneficiary.

Brown strains the credulity of this court with his claim that the lottery—and the mechanism for selling tickets which effectuates its intent—renders each member of the ticket-buying public a third party beneficiary. The People of California did not pass the Lottery Act to benefit those who wish to engage in a capricious fling with fortune. Clearly, the purpose of the contract was to give effect to the mandate underlying the California Lottery itself, which is to benefit the state's public education system.[2]

The language in the Lottery Act contains no intimation that the lottery has been implemented with any purpose other than to finance public education.

---

[2]"The People of the State of California declare that the purpose of this Act is support for preservation of the rights, liberties and welfare of the people by providing additional monies to benefit education without the imposition of additional or increased taxes." (Gov. Code, § 8880.1.)

Therefore, it is unrealistic to label Brown a creditor beneficiary because the State did not contract with Southland to discharge any legal duty which it owed to him. (See 1 Witkin, Summary of Cal. Law (9th ed. 1987) Contracts, § 654, p. 594.) Nor does Brown qualify as a donee beneficiary, for the State neither intended to bestow a gift on him nor did it seek to assign an enforceable right against Southland. (See *Martinez* v. *Socoma Companies, Inc.* (1974) 11 Cal.3d 394, 401 [113 Cal.Rptr. 585, 521 P.2d 841].) In sum, Brown cannot enforce the contract because he derives only a remote and incidental benefit from it.

■■■ Brown additionally claims that the 7-Eleven clerk in Southland's employ negligently failed manually to enter his numbers and negligently misinformed him that the terminal could only generate "quick pick" tickets.

■■■ Actionable negligence requires the presence of a legal duty to use due care, a breach of that duty, and a causal relationship between the breach and the resulting injury. (*United States Liab. Ins. Co.* v. *Haidinger-Hayes, Inc.* (1970) 1 Cal.3d 586, 594 [83 Cal.Rptr. 418, 463 P.2d 770]; *Nally* v. *Grace Community Church* (1988) 47 Cal.3d 278, 292 [253 Cal.Rptr. 97, 763 P.2d 948].)

■■■ The sheer remoteness of any harm compels the conclusion that Southland owed no legal duty to Brown. The odds of winning the lottery are extraordinarily slight, to say the least; the chances of picking the correct numbers are far less than one in a million. Yet, Brown proposes to saddle retail establishments with an onerous burden. No store would participate in the California Lottery if to do so opened the door to crushing liability every time a machine was inoperative, malfunctioned, or an employee was too busy to attend to the needs of fortune seekers.

■■■ Strong public policy considerations militate against imposing any duty on vendors of tickets. Although eligible members of the public have a right to purchase tickets, this right is a discretionary one and of a limited nature. It does not rise to the level of a fundamental right. Rather, it has been granted by statute as a narrow exception to state laws which prohibit gambling. While the Lottery Act permits individuals to purchase tickets, it does not vest in them the right to maintain an action simply because they are incapable of purchasing these tickets at a time and place of their choosing.

Concern for fraud alone weighs heavily in our calculations. The stakes are high, and we can measure the incentive to engage in deceptive practices by the lucrative result which would await successful plaintiffs, like so much

gold at the end of a lucky rainbow. We decline to encourage such scenarios. Public policy demands that the interests of an efficiently run and trustworthy lottery system outweigh the speculative pretensions of individual would-be ticket holders.

■ Finally, Brown's lack of success in purchasing a ticket at a particular locale need not have prevented him from achieving satisfaction at some other location. Had he not waited till the last possible instant to make his down payment on a dream, Brown might have reaped more than just a crapshoot in the courts. We will not hold any establishment to answer for the procrastination of fortune seekers. The burden rests on the bettor to get to a working terminal in time to play.

II.

### No Cause of Action Has Been Stated Against the State of California

Brown argues that the State negligently failed to maintain the necessary equipment to generate and sell tickets to the public. He further contends that the State failed to properly train and supervise its retail agents and their employees in the operation of the equipment and the procedures for selling tickets to the public.

■ The general rule is that "[a] public entity is not liable for an injury, whether such injury arises out of an act or omission of the public entity or a public employee or any other person." (Gov. Code, § 815, subd. (a).) Governmental liability is limited to exceptions specifically set forth by statute. (*Cochran* v. *Herzog Engraving Co.* (1984) 155 Cal.App.3d 405, 409 [205 Cal.Rptr. 1]; *Sava* v. *Fuller* (1967) 249 Cal.App.2d 281, 284 [57 Cal.Rptr. 312].)

■ Brown directs us to two sections of the Lottery Act which he claims lays the foundation for a mandatory duty. Thus, Government Code section 8880.33 provides in part that "[t]he commission *shall* promulgate rules and regulations specifying the manner of distribution, dissemination, or sale of lottery tickets or shares to lottery game retailers or directly to the public . . . ." (Italics added.) Government Code section 8880.47 states that "[t]he Commission *shall* promulgate rules and regulations specifying the terms and conditions for contracting with Lottery Game Retailers so as to provide adequate and convenient availability of tickets or shares to prospective buyers of each Lottery Game as appropriate for each such game." (Italics added.) The presence of the word "shall" in those sections does not necessarily impose a mandatory duty on the State. (*Nunn* v. *State of California*

(1984) 35 Cal.3d 616, 625 [200 Cal.Rptr. 440, 677 P.2d 846]; *Fox* v. *County of Fresno* (1985) 170 Cal.App.3d 1238 [216 Cal.Rptr. 879]; *Keech* v. *Berkeley Unified School Dist.* (1984) 162 Cal.App.3d 464, 470-471 [210 Cal.Rptr. 7].) The Lottery Act was not intended to create liability in the event that terminals malfunction or are improperly maintained. Moreover, nothing in the act lends color to the proposition that the lottery must bear the consequences for the ineptitude or intransigence of retail clerks who have virtually no employment relationship with the State.

CONCLUSION

The judgment is affirmed.

Newsom, Acting P. J., and Dossee, J., concurred.