[No. H008156. Sixth Dist. Dec. 31, 1991.]

RAYLENE HAIR, Plaintiff and Appellant, v.
THE STATE OF CALIFORNIA et al., Defendants and Respondents.

## COUNSEL

Noland, Hamerly, Etienne & Hoss, Peter T. Hoss and Michael P. Masuda for Plaintiff and Appellant.

Daniel E. Lungren, Attorney General, Robert L. Mukai, Chief Assistant Attorney General, N. Eugene Hill, Assistant Attorney General, Jose Guerrero and Kerry Weisel, Deputy Attorneys General, for Defendants and Respondents.

## OPINION

**AGLIANO, P. J.—**

I. *Introduction*

Plaintiff Raylene Hair, the holder of a winning California lottery ticket, brought this action for declaratory relief and to recover damages from defendants State of California and California State Lottery Commission. She claims she is entitled to payment of $900,000 over a 10-year, rather than an 18-year period. The trial court granted defendants' motion for summary judgment. We affirm.

II. *Scope of Review*

 "Since a summary judgment motion raises only questions of law regarding the construction and effect of the supporting and opposing papers,

we independently review them on appeal, applying the same three-step analysis required of the trial court. (Code Civ. Proc., § 437c . . . .) First, we identify the issues framed by the pleadings . . . . [¶] Secondly, we determine whether the moving party's showing has established facts which negate the opponent's claim and justify a judgment in movant's favor. [Citations.] . . . [¶] When a summary judgment motion prima facie justifies a judgment, the third and final step is to determine whether the opposition demonstrates the existence of a triable, material factual issue. [Citation.]" (*AARTS Productions, Inc.* v. *Crocker National Bank* (1986) 179 Cal.App.3d 1061, 1064-1065 [225 Cal.Rptr. 203].)

## III. *The Pleadings*

The first cause of action alleges defendants made an offer to pay holders of winning lottery tickets in accordance with a posted sign stating that payments would be made in 10 annual installments and that after plaintiff presented the winning ticket, defendants breached their contract by tendering payment in 18 annual installments.

The second cause of action alleges plaintiff is entitled to specific performance because she has no adequate remedy at law for false and misleading advertising.

The third cause of action alleges defendants' officials were aware that erroneous information was posted at the store where plaintiff's assignor purchased the winning ticket; that defendants' officials did not require the retailer to remove this information and replace it with the correct information; that plaintiff's assignor relied upon the erroneous information in purchasing the lottery ticket; and that defendants are now estopped from asserting that their regulations are different from those posted.

The fourth cause of action alleges defendants failed to exercise due care by not advising retailers that there had been changes in the regulations and that plaintiff was damaged as a proximate result of defendants' negligence.

The fifth cause of action seeks a declaratory judgment requiring defendants to pay plaintiff her lottery prize in 10 annual installments.

## IV. *Facts*[1]

Plaintiff has brought this action as the assignee of her husband, Bill Hair. Mr. Hair purchased the lottery ticket at issue in this case, a Lotto 6/49 ticket

---

[1]Defendants' motion for summary judgment was supported by a memorandum of points and authorities, a statement of facts, a declaration by counsel incorporating portions of the deposition testimony of Raylene Hair and Bill Hair, and a declaration by Jim Barnett. In

for the September 14, 1988, drawing, from Quik Stop Market 89 on Laurel Drive in Salinas, California. A cigarette manufacturer had supplied a sign which was posted in the store. It stated that a winner of Lotto 6/49 in the "6 of 6" category would receive payments in 10 annual installments if winnings were in the range of $700,000 to $999,000. This information was based on California State Lottery (CSL) Rules and Regulations which were no longer in effect.

After learning that all six of the numbers he had selected for his ticket had been drawn, Mr. Hair and plaintiff went to the CSL office in San Jose to complete the paperwork necessary to collect the prize money. Mr. Hair transferred the ticket to plaintiff and she signed it and placed her name on all documents required for collection of the money. At that time plaintiff was informed that the money would be paid over an 18-year period.

The Lottery Act and the CSL Rules and Regulations determine the amount of money available for prizes. The Lottery Act provides that "50% of the total annual revenues [of the Lottery] shall be returned to the public in the form of prizes . . . ." (Gov. Code, § 8880.4.) For each drawing "[t]he available prize pool will be approximately 50 percent of total sales for the drawing period immediately preceding the drawing at which the prize winners are determined" with 40 percent of the prize pool allocated to those players who have selected all six of the six winning numbers (6 of 6 winners).[2] (CSL Rules & Regs., 5(c)(3).) The 6 of 6 winners are paid "on a parimutuel basis with each winner receiving an equal share of the allocated prize pool portion." (CSL Rules & Regs., 5(c)(1).)

There were six winners on September 14 in the 6 of 6 category. The total amount of cash in the prize pool allocated to the 6 of 6 winners was $2,727,324. Under the CSL Rules and Regulations in effect at that time, the lottery values the 6 of 6 category prize as the "value of the largest 20-payment annuity that can be purchased with the available cash in the 6 of 6 prize pool category at the time of each Drawing" divided by the number of winners in the 6 of 6 category and pays that amount in annual payments over 20 years. However, if that amount is less than $1 million, it pays in annual $50,000 increments until the full amount is paid. Here, application of this formula resulted in each 6 of 6 winner receiving $900,000 to be paid in $50,000 annual increments over an 18-year period.

---

opposition to the motion, plaintiff filed a memorandum of points and authorities, a statement of facts, a declaration by counsel incorporating the deposition testimony of Isodoro Ramirez and Bill Hair. The material facts are not in dispute.

[2]The 6 of 6 prize pool also includes the 6 of 6 prize pool money from the previous drawing if there was no winner and any money left over after rounding down the payments for the previous drawing. (CSL Rules & Regs., 5(d)(3).)

Isodoro Ramirez was the lottery official who communicated CSL Rules and Regulations to retailers in the Salinas area in September 1988. In his deposition, he testified that the owner of Quik Stop Market 89 was displaying a sign supplied by a cigarette manufacturer. This sign contained outdated and erroneous information as to payments to 6 of 6 winners. Mr. Ramirez also testified that between May 1988 and September 1988 he provided retailers with pads stating the current information on the payment schedule for prospective lottery purchasers to fill out. However, he also advised retailers that they could continue using the old pads until they ran out.

In his declaration, Mr. Hair stated that when he purchased his lottery ticket, a sign posted in the store indicated that 6 of 6 winners in the range of $700,000 to $999,000 would be paid in 10 equal annual installments. Mr. Hair also testified in his deposition that he would have purchased a lottery ticket even if he had known that he would have been paid over an 18-year period rather than a 10-year period.

*Discussion*

A. *Breach of Contract*

█ Plaintiff first contends "the purchase of a Lottery ticket creates a contract" and the terms of this contract should be interpreted according to her reasonable expectations.

In *Aguimatang* v. *California State Lottery* (1991) 234 Cal.App.3d 769 [286 Cal.Rptr. 57], the plaintiff brought an action for breach of contract and conversion. He alleged the CSL Commission awarded him one-fourth, rather than one-third, of a $15.9 million jackpot. He further alleged that the jackpot must be divided by the number of individuals who presented winning tickets and not by the number of winners reflected in the commission's computer. In reaching its decision, the appellate court recognized that the commission properly conceded that a contractual relationship exists between holders of winning tickets and the commission. (*Id.* at p. 793.)

At issue here are the terms of the contract between plaintiff and defendants. A governmental agency has only those powers which are expressly provided by statute. (*Moody* v. *Provident Irr. Dist.* (1938) 12 Cal.2d 389, 394 [85 P.2d 128].) Government Code section 8880.29 authorizes the lottery commission to promulgate rules and regulations specifying the value of prizes. Pursuant to these rules and regulations, defendants could only pay the "value of the largest 20-payment annuity that can be purchased with the

available cash in the 6 of 6 prize pool category at the time of each Drawing" divided by the number of winners in the 6 of 6 category. Where the amount is less than $1 million, it pays in annual installments of $50,000 until the full amount is paid. Thus, here the application of the formula resulted in each 6 of 6 winner receiving $900,000 in $50,000 annual installments over 18 years. Defendants had no authority to pay plaintiff pursuant to outdated CSL Rules and Regulations.

■ Further, when Mr. Hair purchased the ticket at issue, he received a Lotto playslip in which he agreed to be bound by the CSL Rules and Regulations. The playslip states that "[u]pon submission of a Lotto playslip for processing, the player agrees to abide by the California Lottery rules and regulations." The playslip also states that "prize payments are subject to State Law and the rules and regulations of the California State Lottery" and that "Lotto is governed by state law and the rules and regulations of the California State Lottery." As the assignee of her husband, plaintiff was also bound by the CSL Rules and Regulations. Under the CSL Rules and Regulations in effect at the time of purchase, defendants were required to pay plaintiff $900,000 in annual installments of $50,000 over 18 years.

### B. *Equitable Estoppel*

■ Plaintiff next invokes the doctrine of equitable estoppel. She contends there is a triable issue of fact as to whether Mr. Hair reasonably believed that he was purchasing a ticket which would be paid over a 10-year period.

"Whenever a party has, by his own statement or conduct, intentionally and deliberately led another to believe a particular thing true and to act upon such belief, he is not, in any litigation arising out of such statement or conduct, permitted to contradict it." (Evid. Code, § 623.) ■ Thus, the doctrine of equitable estoppel involves the presence of four elements: " '(1) the party to be estopped must be apprised of the facts; (2) [it] must intend that [its] conduct shall be acted upon, or must so act that the party asserting the estoppel had a right to believe it was so intended; (3) the other party must be ignorant of the true state of facts; and (4) [the other party] must rely upon the conduct to [her] injury.' [Citations.]" (*Cole* v. *City of Los Angeles* (1986) 187 Cal.App.3d 1369, 1374 [232 Cal.Rptr. 624]; see also 11 Witkin, Summary of Cal. Law (9th ed. 1990) Equity, § 177, p. 859.) Where any one of the elements of equitable estoppel is absent, the claim must fail. (*City and County of San Francisco* v. *Grant Co.* (1986) 181 Cal.App.3d 1085, 1091 [227 Cal.Rptr. 154].) "The essence of an estoppel . . . is that the party to be estopped has by false language or conduct led another to do that which he

would not otherwise have done and as a result thereof that he has suffered injury. [Citations.]" (*In re Lisa R.* (1975) 13 Cal.3d 636, 645 [119 Cal.Rptr. 475, 532 P.2d 123, 90 A.L.R.3d 1017].)

■ Relying on the language of Evidence Code section 623, plaintiff argues the case law has added an element to the doctrine of equitable estoppel. She claims she need not establish that her husband was led by defendants "to do that which he would not otherwise have done." We disagree. The statute requires that plaintiff establish that her husband was led "to act upon . . . [his] belief" that the payout period was 10 years. However, Mr. Hair's deposition establishes otherwise. He testified that he would have purchased the lottery ticket even if he had known that he was going to be paid over an 18-year period, thus he did not rely upon any allegedly erroneous information provided by defendants.

### C. *Negligence*

■ Plaintiff also contends defendants' failure to ensure that lottery retailers post the current CSL Rules and Regulations and to provide pads with the correct information constituted actionable negligence.

■ To establish negligence, a party must prove the following: "(a) a *legal duty* to use due care; (b) a *breach* of such legal duty; (c) the breach as the *proximate* or *legal cause* of the resulting injury. [Citations.]" (6 Witkin, Summary of Cal. Law (9th ed. 1988) Torts, § 732, p. 60, italics in original.)

■ At issue here is whether plaintiff can show that defendants' alleged negligence caused or contributed in some way to any injury. If her injury would have been sustained regardless of defendants' negligence, then defendants' conduct cannot be a cause of the injury. Plaintiff's alleged injury is that her lottery prize is being paid in 18 rather than 10 annual installments. However, the 18-year payment schedule did not result from the alleged negligence, but rather from the CSL Rules and Regulations themselves. Informing plaintiff of the current rules and regulations would not have changed the 18-year payment schedule. Accordingly, plaintiff cannot prevail on a cause of action for negligence.

### *Disposition*

The judgment is affirmed.

Elia, J., and Bamattre-Manoukian, J., concurred.