265 N.J. Super. 503 (1993)
627 A.2d 1167
FLORENCE DRISCOLL, PLAINTIFF,
v.
STATE OF NEW JERSEY, DEPARTMENT OF TREASURY, DIVISION OF THE LOTTERY; RITE-AID PHARMACY, DEFENDANTS.
Superior Court of New Jersey, Law Division Ocean County.
Decided April 8, 1993.
*506 John J. Breslin, III, for plaintiff (Breslin, Auty & Preziosi, attorneys).
John Paul Dizzia, for defendant Rite-Aid Pharmacy.
David Demba, Deputy Attorney General of New Jersey for defendant State of New Jersey, Department of Treasury, Division of Lottery (Robert J. Del Tufo, Attorney General, attorney).
PISCAL, J.S.C.
This opinion resolves the motion for summary judgment filed by defendant Rite-Aid of New Jersey, Inc. (hereinafter Rite-Aid). The complaint was filed by the plaintiff, Florence Driscoll, a purchaser of a lottery ticket. She sues the State of New Jersey, Department of Treasury, Division of the Lottery (hereinafter Commission) and Rite-Aid, a licensed vendor of lottery tickets, to recover damages as the holder of a PICK "Six" New Jersey lottery ticket bearing the winning numbers for the October 1, 1990 drawing.
The gravamen of plaintiff's complaint is that the defendants negligently and carelessly failed to notify the plaintiff and the general public that the lottery time of the drawing for the PICK "Six" lottery was to change from 9:56 p.m. to 7:56 p.m. beginning with the October 1, 1990 drawing causing her to delay in purchasing her ticket for the October 1, 1990 drawing until after 7:56 p.m. Because this opinion decides the defendant Rite-Aid's motion for summary judgment, the facts presented by plaintiff are accepted as true and the plaintiff is given the benefit of all inferences favorable to her claim. R. 4:46-2.
In August of 1990, approval was obtained for the lottery drawing time to be changed from 9:56 p.m. to 7:56 p.m. effective October 1, 1990. When the drawing time was changed to 7:56 p.m. the PICK "Six" tickets were available for purchase until 10:00 p.m. and any ticket purchased after the drawing was entered into the next succeeding drawing.
*507 In order to notify lottery players of the new time the Commission implemented a plan to publicize the change. The plan provided for notification to the general public by several different means. First, an announcement of the drawing time change was published for five days, September 26, 27, 28, 29, 1990 and October 1, 1990, in numerous papers throughout New Jersey including the Asbury Park Press, Ocean County Observer, Atlantic City Press, Bergen Record, Camden Courier, Elizabeth Daily Journal, Jersey Journal, Morristown Record, New Brunswick Home News, Newark Star Ledger, and N.J. Herald News. A press release was also distributed to the Associated Press and the United Press International. Second, letters were enclosed in the packages of lottery tickets and informational materials delivered to all lottery ticket sales agents on August 30 through September 4, 1990 which explained the changes in drawing times and the effective date of the change. Third, and most importantly for the purposes of this motion, a poster announcing the change in drawing time and the effective date of the change was distributed to all licensed agents in the delivery cycle covering September 20, 1990 to September 26, 1990, which was to be mounted on a prominent public window of the agencies' premises. Fourth, the change in drawing time was announced during the lottery's televised drawings on September 24, 1990 through September 30, 1990. Lastly, electronic advisory messages were run on the customer display screen of the lottery ticket terminal which is directed at the lottery customers waiting on line to purchase tickets. These electronic messages announcing the change of time appeared on August 31, September 1 and 2, and September 25 through October 1, 1990.
At deposition the plaintiff testified that during the six month period prior to the October 1, 1990 drawing, she purchased lottery tickets at least twice weekly. She generally purchased her tickets on the day of the drawing and from only two licensed agents other than Rite-Aid, namely, the Briar Mill Pharmacy in Bricktown and the Buy-Rite Liquors in Point Pleasant. Additionally, during the same time period, she frequented, at least twice monthly, a 7-11 *508 store in Bricktown which was also a licensed lottery agency selling lottery tickets.
The plaintiff testified that she did not observe posters announcing the time change at any of these locations. In fact, although there was no evidence proffered to establish whether the posters were displayed at the Briar Mill Pharmacy or the Buy-Rite Liquors, it was undisputed that Rite-Aid had discarded the poster without ever displaying it in view of the public.
The plaintiff also testified that she did not learn of the time change despite her exposure to the other sources utilized by the Commission to announce the change of drawing time: She read the Asbury Park Press less than once a week at work; checked the Press at least twice a week but only to verify the winning numbers for the lottery drawings; watched the news on NBC and CBS, and listened to the WNEW-AM radio stations commuting to and from work. She did not subscribe to any newspapers or purchase the newspaper on a day to day basis.
Against this backdrop, the plaintiff entered the Rite-Aid pharmacy located in Bricktown on October 1, 1990 at approximately 7:40 p.m., for the purpose of purchasing a lottery ticket for the October 1, 1990 PICK "Six" drawing. However, she did not immediately purchase her ticket, she says, because there was a very long line of people waiting at the lottery terminal. Instead, she browsed through the store waiting for the line to decrease. While the plaintiff was browsing through the store, the October 1, 1990 drawing took place as scheduled at approximately 7:56 p.m.
At about 8:00 p.m.,[1] the plaintiff finally purchased at least three PICK "Six" chances printed on one machine ticket believing, she says, that the tickets were for the October 1, 1990 drawing. *509 However, since the October 1, 1990 drawing had already taken place, the machine automatically printed the date of October 4, 1990 on the face of the plaintiff's ticket thus indicating that her tickets were for the October 4, 1990 drawing. As it turned out, one of the chances the plaintiff had purchased was for the combination of numbers 6, 11, 13, 22, 26, 45.[2] These numbers were the winning numbers for the October 1, 1990 drawing!
At home later that evening, the plaintiff telephoned the lottery information number and discovered that the numbers on her ticket were selected as the winning numbers for the October 1, 1990 PICK "Six" drawing. However, upon attempting to validate the ticket at the Rite-Aid store the following day, she learned that the ticket was dated for the October 4, 1990 drawing and not for the drawing on October 1, 1990.
Both defendants filed motions for summary judgment asserting that if they owed a duty to the plaintiff to provide notice of the change of drawing time, there was no breach of that duty on the facts of this case. As to the defendant Rite-Aid, the plaintiff contends that but for the failure to display the promotional poster announcing the change in drawing time she would have been aware of the change in time and not delayed in purchasing her ticket for the October 1, 1990 drawing.
For the reasons set forth below this court grants the defendant Rite-Aid's motion finding the plaintiff fails to state a claim upon which relief can be granted. As to the defendant Commission's motion, the plaintiff stipulated at oral argument that she did not oppose the motion. Thus, this court dismissed the plaintiff's complaint as to the defendant State of New Jersey, Department of the Treasury, Division of the Lottery. However, even if plaintiff had vigorously opposed the State's motion, summary judgment *510 would have also been granted the State for the reasons expressed herein.

I. Contractual Liability
There is little case law in New Jersey regarding the viability of a cause of action on behalf of a lottery ticket holder arising out of a statewide lottery scheme. See Karafa v. New Jersey State Lottery Comm'n, 129 N.J. Super. 499, 324 A.2d 97 (Ch.Div. 1974) (involving a "lost" lottery ticket). The question has been considered in other jurisdictions. While not binding or obligatory authority, this court favors judicial consistency and the endorsement of precedent set by the courts of sister states.
It has been held that the relationship arising out of the lottery system is primarily contractual in nature. Thao v. Control Data Corp., 57 Wash. App. 802, 790 P.2d 1239 (1990). Accord Aguimatang v. California State Lottery, 234 Cal. App.3d 769, 286 Cal. Rptr. 57 (1991); Brown v. California State Lottery Comm'n, 232 Cal. App.3d 1335, 284 Cal. Rptr. 108 (1991); Hair v. State, 2 Cal. App. 4th 321, 2 Cal. Rptr.2d 871 (Ct.App. 1991); Valente v. Rhode Island Lottery, 544 A.2d 586, 589 (R.I. 1988). A ticket holder is said to have accepted an offer upon purchasing the lottery tickets at the licensed agency. Brown, 284 Cal. Rptr. at 111.
From a contractual perspective, the terms of the contract are subject to the lottery law, and the rules and regulations promulgated pursuant to that authority. See Karafa, 129 N.J. Super. at 503, 324 A.2d 97 (regulations governing lottery procedures "have the force and effect of law"). The rights and obligations of the contracting parties arising out of a lottery ticket purchase cannot, therefore, contravene the rules and regulations of the Commission. In this case, the plaintiff has no right to the relief requested because the claim she asserts directly contravenes the lottery rules and regulations.
The State Lottery Law empowers the Commission to promulgate rules and regulations regarding the time and date of the drawings. N.J.S.A. 5:9-1 et seq. As a willing participant, the *511 plaintiff agreed to be bound by the rules and regulations governing the lottery. A statement to this effect is printed on the back of all New Jersey PICK "Six" lottery tickets. Additionally, there is language that expressly limits the validity of the ticket as to the eligible drawing date and the claiming of prize monies thereunder:
This ticket is valid only for the drawing(s) on the front of this ticket. All prizes must be claimed within one year after the drawing date in which the prizes are won. All tickets, transactions, drawings and prizes are subject to the Rules and Regulations of the New Jersey Lottery Commission. Not responsible for lost or stolen tickets.
Notice of this statement is imputed to the plaintiff upon her purchase of the lottery ticket. The rules printed on the back of the ticket were in clear and understandable language. In the circumstances of this case, the language could only be interpreted to intend that the plaintiff's ticket was valid for the drawing date of October 4, 1990, the date which was legibly printed on the front of the ticket. This court recognizes that such an interpretation is a literal adherence to the language in the regulation. However, it is well settled that strict construction is the rule of thumb in the lottery arena.[3]
Of interest is the case of Madara v. Commonwealth, 13 Pa. Cmwlth. 433, 323 A.2d 401 (1974) where language identical to that printed on the back of the New Jersey tickets was strictly *512 construed against the ticket holder. In Madara, the court strictly construed Section 14 of the State Lottery Law, 72 P.S. § 3761-14 which provided that prize money unclaimed for one year after the drawing in which the prize was won would revert back to the fund.[4] The plaintiff had placed his winning lottery ticket in his wallet which was mislaid until one year and two days after the drawing. The court upheld the lottery commission's refusal to honor the ticket. Similarly, in Valente v. Rhode Island Lottery Comm'n, supra, the Rhode Island Supreme Court strictly construed the lottery rules which find counter part in the New Jersey lottery law. The language printed on the back of the ticket stated "[t]ickets void * * * if ticket fails any lottery validation requirement."[5] The plaintiff held a ticket bearing the winning numbers except that one of the numbers on the ticket was blurred. The court ruled against the plaintiff because the ticket failed validation, a condition of the contract. Valente, 544 A.2d at 590. See also Coleman v. State, 77 Mich. App. 349, 258 N.W.2d 84 (1977) (unilateral mistake inappropriate although a winning number was announced since the rules provided that the number in the envelope determined which contestant won).
In the case at bar, the normal and common meaning and usage of the language printed on the ticket are clear and unambiguous. Strictly construed, the ticket is only good for the date on the face of the ticket. Karafa, 129 N.J. Super. at 504, 324 A.2d 97; McCabe v. Director N.J. Lottery Comm'n, 143 N.J. Super. 443, 445, 363 A.2d 387 (Ch.Div. 1976). Thus, the only right the plaintiff held arising out of the ticket at issue was one which entitled her to a chance in the drawing for October 4, 1990. While a liberal and *513 flexible approach would, from the viewpoint of the plaintiff, more fairly respond to a ticket holder's innocent expectations, the regulations, rather simply, prohibit such a result. Although the plaintiff was disappointed because she thought she had purchased a ticket for the October 1st drawing, this court sees no reason why the express terms of the contract should not be enforced.
Even absent the limitation created by the lottery rules, the facts evidence no mutual assent to any understanding between the plaintiff and the defendant Rite-Aid that the plaintiff had contracted for a "chance" to win the lottery in the drawing for October 1, 1990. Neither the plaintiff nor the defendant contend that Rite-Aid represented it was selling a ticket for October 1, 1990 or that the plaintiff made a specific request for the October 1, 1990 drawing. It is elementary that a contract cannot be made absent a "meeting of the minds" as to the exchange. Restatement (Second) of Contracts, § 17 cmt. c (1979). Other courts have similarly concluded that no rights accrue to a share in the winnings of a lottery pool from the mere purchase of the ticket albeit a winning ticket  all rights attach to the winning ticket and accrue from actual possession thereof. Hair, 2 Cal. Rptr.2d at 871; Brown, 284 Cal. Rptr. at 111. For citation to numerous cases denying recovery where the player did not have possession of the winning ticket, see Karafa, 129 N.J. Super. at 506, 324 A.2d 97.

II. Negligence
It is settled that to render a person liable on the theory of negligence there must be some breach of duty, by action or inaction, on the part of the defendant to the individual complaining, and that the negligent conduct was a substantial contributing factor in causing the loss. Fortugno Realty Co. v. Schiavone-Bonomo Corp., 39 N.J. 382, 393, 189 A.2d 7 (1963); Mazzilli v. Selger, 13 N.J. 296, 301, 99 A.2d 417 (1953); Scafidi v. Seiler, 225 N.J. Super. 576, 543 A.2d 95 (App.Div. 1988), aff'd and modified on other grounds, 119 N.J. 93, 574 A.2d 398 (1990). If there is any *514 duty breached by Rite-Aid in the present case, it is to be found in the New Jersey Administrative Code which states:
(a) Every agent shall prominently display in an area visible to the general public:
1. The license; and
2. Lottery promotional signs.
(b) In addition, the "Authorized Lottery Agent" decal shall be mounted on a prominent public window of the agent's premises.
(c) The agent shall maintain and display all Lottery flyers, betting cards and other circulating material in an area open to the public.

[N.J.A.C. 17:20-4.5.]
The regulation was promulgated by the Commission in accordance with State Lottery Law. N.J.S.A. 5:9-1 et seq. Although the plain language of the regulation required Rite-Aid, as a licensed lottery agent, to display the poster announcing the time change, the unexpressed but readily apparent purpose behind the regulation was to facilitate the dissemination of information regarding the lottery to the public at large.
For the sake of argument, it is assumed that pursuant to this regulation Rite-Aid was under an obligation to the general public, a fortiori, to the plaintiff, to disseminate the information regarding the change of drawing time by displaying the poster distributed by the Commission. This court fails to see where the regulation articulates a basis for concluding that Rite-Aid owed the plaintiff a duty of particularized or actual notice. And, while it was undisputed that the manager of the Rite-Aid store discarded the poster upon its receipt, any violation of the regulation is not conclusive on the issue of negligence in a civil action but merely a circumstance which is to be taken into consideration upon assessing liability. Braitman v. Overlook Terrace Corp., 68 N.J. 368, 346 A.2d 76 (1975). The ultimate question is did the plaintiff produce sufficient evidence from which a reasonable jury could find that the defendant's failure to display the poster was the cause of plaintiff's loss. McKinley v. Slenderella Systs. Inc., 63 N.J. Super. 571, 580, 165 A.2d 207 (App.Div. 1960).
*515 In addition to the posters distributed by the Commission, the change in drawing time was also dispatched on the customer display screen on the lottery computer terminal at Rite-Aid and other licensed agents. The electronic message announced the change of drawing time to lottery customers every 15 to 29 seconds throughout the lottery sales day. A lottery ticket purchaser would have stood in line directly in front of the computer display terminal which announced the change in drawing time. The plaintiff, who purchased lottery tickets at least twice weekly, would have stood in line in front of the customer display screen at the particular agency.
Moreover, the record presents a plethora of announcements of the change of drawing time which were disseminated conspicuously to the general public in an effort to keep lottery players apprised of the new time. The plaintiff admits to checking the newspapers regularly to look for the winning lottery numbers, listening to the radio on the way to work, and watching television. She was a regular lottery player  in the "mainstream" of the pari-mutuel gambling scheme  yet despite her exposure to these sources and despite the State's comprehensive and coordinated plan to publicize the change of time and notify the general public, the plaintiff remained uninformed.
In support of her contention that Rite-Aid's failure to display the poster wrongfully caused her to delay in purchasing her ticket, the plaintiff proffered only her testimony that she was unaware of the time change and Rite-Aid's admission that it had not displayed the poster. Upon considering the credible evidence of record, this court finds as follows: (1) advance notice reasonably calculated to impart the information as to the change of drawing time was clearly effected, and (2) reasonable minds could not differ in concluding that the discarding of the poster by Rite-Aid was not a substantial contributing factor in causing the plaintiff to be uninformed of the change in drawing time or to delay in the purchase of her ticket prior to the drawing on October 1, 1990. *516 Through no fault of the defendant Rite-Aid, the plaintiff was not a holder of a winning ticket for the October 1, 1990 drawing.
It is possible that had the poster been displayed the plaintiff might have observed it, read it, learned of the change in drawing time and purchased her ticket before shopping. However, a finding of negligence is not "a creature of mere surmise or conjecture; it denotes elements of factuality from which a lack of due care can be rationally deduced." McKinley, 63 N.J. Super. at 580, 165 A.2d 207. It must be founded on probabilities and not on the mere possibilities of a situation. Jelinek v. Sotak, 9 N.J. 19, 24, 86 A.2d 684 (1952). This court finds there is no reasonable basis for actionable negligence against the defendant Rite-Aid in the facts of this case.

III. Public Policy
Lastly, any enforceable right arising out of the failure to sell a ticket in the facts of this case must fail for public policy reasons. "Public policy demands that the interests of an efficiently run and trustworthy lottery system outweigh the speculative pretensions of individual would-be ticket holders." Brown, 284 Cal. Rptr. at 112.
In this case, the plaintiff lives only a few minutes from the Rite-Aid store where the ticket was purchased and is familiar with calling the lottery number to learn the winning numbers for any given drawing. Without implication that the plaintiff has participated in any fraudulent scheme, this court is mindful of the fact that there is nothing to prevent a bettor from purchasing a ticket only minutes after first calling the lottery hot line to ascertain the winning numbers for the drawing on October 1, 1990. This is but one of the many schemes that could be conspired to increase one's chances of winning. Recognizing a viable cause of action in this case would open the door to deceptive practices by fortune-seekers hoping to beat the odds in the lottery game.
The right to participate in the lottery game is a limited right. Where one willingly elects to participate in the lottery *517 scheme, the burden must be placed upon the fortune-seekers to become informed of the rules that govern the outcome of the game, including the time and dates of the drawing, or suffer the consequences for failing to keep him or herself apprised. In essence, this is the heart of the plaintiff's claim  that had the poster been mounted she would have been informed and would have bought her tickets earlier.
The authority to promulgate rules establishing the time of the drawing and limiting the validity of the ticket to the date printed on the ticket rests with the Commission. N.J.S.A. 5:9-1 et seq. This court cannot now bend those rules to allow the plaintiff a cause of action simply because she was too busy or too languorous to keep herself apprised of the rules of a game which were made readily available to everyone.
Moreover, as other courts have concluded, imposing a duty on the vendor of tickets is improper where the "sheer remoteness of any harm compels the conclusion that ... [Rite-Aid] owed no legal duty to the [plaintiff]. The odds of winning the lottery are extraordinarily slight, to say the least; the chances of picking the correct numbers are far less than one in a million.... No store would participate in the [] Lottery if to do so opened the door to crushing liability." Brown, 284 Cal. Rptr. at 112.
Accordingly, defendant's motion for summary judgment is granted.
NOTES
[1] The plaintiff testified at deposition that she purchased her ticket around a quarter of eight and eight o'clock p.m. However, the computer report for transactions occurring on October 1, 1990 at the Rite-Aid agency indicates that the plaintiff's purchase was made at nineteen minutes and forty-five seconds after eight o'clock p.m.
[2] The plaintiff testified at deposition that the combination of numbers she played that night were numbers that she had selected by marking the boxes on the computer card used to generate the tickets from the lottery machine, although she varied the numbers she played on a weekly-daily basis.
[3] Lotteries are exceptions to the general policy against gambling and the administrative rules regulating lotteries which are run by, or on behalf of, state or local government must be strictly construed. Atlantic City Racing Ass'n v. Attorney General, 98 N.J. 535, 489 A.2d 165 (1985); Karafa, 129 N.J. Super. at 504, 324 A.2d 97. By adopting the Constitution of 1947, which contains Art. IV, § 7, par. 2, the people reaffirmed the sentiments of the 1939 amendment which gave a guarded and restrictive approval of pari-mutuel wagering following a forty-two year ban on all public gambling. N.J.S.A. 5:9-2 and 5:9-7(a). For an overview of the historical evolution of legalized gambling in New Jersey, see Atlantic City Racing Ass'n, 98 N.J. at 539-44, 489 A.2d 165. At the general election held in November of 1969, the voters of this State approved an amendment to the Constitution to provide for a State lottery for the benefit of education and public institutions and created an exception to the general prohibition against gambling of any kind. N.J. Const. (1947), art. IV, § 7, par. 2(C).
[4] See N.J.S.A. 5:9-17 for an analogous provision in the New Jersey legislative lottery scheme.
[5] As to an analogous provision in New Jersey lottery regulations, compare N.J.A.C. 17:21-4.2(a) (expired 1983) (voiding tickets failing validation) with N.J.A.C. 17:20-7.4(a) (award of prize upon claim validated pursuant to game rules) and PICK "Six" game Rule 12(b) (governing lottery in 1990 providing for voiding of tickets failing validation).