Regina A. COLLINS; Regina A. Collins, as Representative of a Putative Class; Christopher Land, and Christopher Land, as Representative of a Putative Class, Appellants

v.

KENTUCKY LOTTERY CORPORATION, Appellee.

No. 2011–CA–001073–MR.

Court of Appeals of Kentucky.

Oct. 12, 2012.

Discretionary Review Denied by Supreme Court June 12, 2013.

Circuit Court granting summary judgment to the Kentucky Lottery Corporation (KLC). They also argue that the trial court should have granted their motion for class certification. After our review, we affirm.

Collins and Land sued KLC after playing the Kentucky Millionaire game. Kentucky Millionaire was a scratch-off game that ran from February 2005 until February 2006. It offered a range of prizes. The advertising for Kentucky Millionaire included a "call-out,"[1] which declared, "Over $10 Million in cash prizes from $25 to $1000!" Collins and Land each purchased winning tickets that paid $20 in winnings. They both attempted to claim a $25 prize, contending that the call-out promised that the minimum prize was $25.

Appellants filed suit against KLC on September 8, 2005, alleging fraud, negligent misrepresentation, breach of contract, unjust enrichment, and violation of the Kentucky Consumer Protection Act (KCPA). On July 30, 2008, they filed a motion for class certification. KLC filed a motion for summary judgment. On March 4, 2009, Collins and Land filed a cross-motion for partial summary judgment. On May 23, 2011, the trial court granted KLC's motion for summary judgment and denied Appellants' motion. The trial court did not rule on the motion for class certification. This appeal followed.

Summary judgment is a device utilized by the courts to expedite litigation. *Ross v. Powell,* 206 S.W.3d 327, 330 (Ky.2006). It is deemed to be a "delicate matter" because it "takes the case away from the trier of fact before the evidence is actually heard." *Steelvest, Inc. v. Scansteel Service Center, Inc.,* 807 S.W.2d 476, 482 (Ky. 1991). In Kentucky, the movant must

Keith B. Hunter, Laurence J. Zielke, Janice Theriot, J. Hays Lawson, Louisville, KY, for appellant.

Jonathan D. Goldberg, Jan M. West, Prospect, KY, Mary R. Harville, Louisville, KY, for appellee.

Before CLAYTON, COMBS, and THOMPSON, Judges.

*OPINION*

COMBS, Judge:

Regina Collins and Christopher Land appeal from the order of the Jefferson

1. An advertising phrase on a ticket is known as a call-out in the lottery industry.

prove that no genuine issue of material fact exists, and he "should not succeed unless his right to judgment is shown with such clarity that there is no room left for controversy." *Id.* The trial court must view the evidence in favor of the non-moving party. *City of Florence v. Chipman*, 38 S.W.3d 387, 390 (Ky.2001). The non-moving party must present "at least some affirmative evidence showing the existence of a genuine issue of material fact[.]" *Id.* On appeal, our standard of review is "whether the trial court correctly found that there were no genuine issues as to any material fact and that the moving party was entitled to judgment as a matter of law." *Scifres v. Kraft*, 916 S.W.2d 779, 781 (Ky.App.1996). Furthermore, because summary judgments do not involve fact-finding, our review is *de novo*. *Pinkston v. Audubon Area Community Services, Inc.*, 210 S.W.3d 188, 189 (Ky.App.2006).

### Claims Under the Kentucky Consumer Protection Act

■ Kentucky Revised Statute[s] (KRS) 367.170(1) provides that "[u]nfair, false, misleading, or deceptive acts or practices in the conduct of any trade or commerce" are unlawful. A person may bring an action under this statute if he:

> purchases or leases goods or services primarily for personal, family or household purposes and thereby suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment by another person of a method, act or practice declared unlawful by KRS 367.170[.]

KRS 367.220(1).

Collins and Land argue that the lottery is engaged in trade and commerce as contemplated and referenced by KRS 367.170(1). However, the trial court held that the threshold requirement of the purchase of goods and services contained in KRS 367.220(1) has not been met and that, therefore, Collins and Land are not entitled to bring a claim under the KCPA.

KRS Chapter 367 does not provide a definition of *goods*. The trial court relied on a portion of the definition of KRS 355.2–105, which provides that goods are "all things which are movable." Appellants urge us to apply a portion of the definition of *goods* from BLACK'S LAW DICTIONARY (9th ed.2009): "[t]hings that have value, whether tangible or not[.]" We believe that it is helpful to examine the BLACK'S LAW definition in its entirety.

> goods. 1. Tangible or movable personal property other than money; esp., articles of trade or items of merchandise <goods and services>. ● The sale of goods is governed by Article 2 of the UCC. 2. Things that have value, whether tangible or not <the importance of social goods varies from society to society>.

BLACK'S LAW DICTIONARY 701 (7th ed.1999).

Lottery tickets are sold. If indeed they are "goods," their sale is controlled by the Uniform Commercial Code (UCC). The Kentucky version of the UCC defines *goods* in the statute upon which the trial court relied—KRS 355.2–105, which provides as follows:

> (1) "Goods" means all things (including specially manufactured goods) which are movable at the time of identification to the contract for sale other than the money in which the price is to be paid, investment securities (Article 8) and things in action. "Goods" also includes the unborn young of animals and growing crops and other identified things attached to realty as described in the section on goods to be severed from realty (KRS 355.2–107).

KRS 355.2–105.

As the trial court pointed out, a lottery ticket represents a chance to win an un-

known amount of money. *See Commonwealth v. Allen*, 404 S.W.2d 464 (Ky.1966). A chance to win money is intangible and cannot be physically moved at the time that it is purchased. The definition of *goods* does not include intangible property. We also find it persuasive that the Michigan Court of Appeals has held that lottery tickets do not come within the purview of the UCC. *Ramirez v. Bureau of State Lottery*, 186 Mich.App. 275, 463 N.W.2d 245 (1990).

■ Alternatively, Collins and Land contend that the trial court erred in not holding that the lottery is a service. In support of this argument, Appellants analogize the lottery to insurance. Insurance policies are ongoing contractual relationships which create obligations for both parties. The insured must maintain payments in exchange for coverage of the loss for which he has sought protection. However, the purchase of a lottery ticket does not create any ongoing contractual relationship between KLC and the player. It is merely a game of chance resulting in a temporary and ephemeral association between the KLC and the purchaser of the ticket.

We also note that "lottery tickets" have been specifically defined as "gambling contrivances." *Gilley v. Commonwealth*, 312 Ky. 584, 229 S.W.2d 60, 62 (1950). The predecessor to our Supreme Court has recognized their uniqueness more than eighty years ago as follows: "[g]aming, betting, and lotteries are separate and distinct things in law and fact, and have been recognized consistently as calling for different treatment[.]" *Commonwealth v. Kentucky Jockey Club*, 238 Ky. 739, 38 S.W.2d 987, 994 (1931).

The Court of Appeals of Texas has held that actions based on purchase of lottery tickets cannot be brought under the Texas counterpart of Kentucky's KCPA. *Kin-*

*nard v. Circle K Stores Inc.*, 966 S.W.2d 613, 617–18 (Tex.Ct.App.1998). In *Kinnard*, the Texas court held that the right to participate in the lottery is intangible and that it is neither a good nor a service. *Id.* We have searched but have not discovered any authority that is contradictory. Based on the long existing precedent in this state and our review of the treatment of this issue in other jurisdictions, we are persuaded that actions arising from transactions regarding the lottery do not fall within the purview of the KCPA. They simply do not state a cause of action under the KCPA.

### Fraudulent and Negligent Misrepresentation Claims

■ Collins and Land contend that the trial court erred in not finding that genuine issues of fact existed pertaining to its claims of fraudulent and negligent misrepresentation. Therefore, they believe that summary judgment was improvidently and prematurely entered.

■ In order to succeed at the threshold level, a claim of *fraudulent* misrepresentation must satisfy six elements:

(1) that the declarant made a material representation to the plaintiff; (2) that this representation was false; (3) that the declarant knew the representation was false or made it recklessly; (4) that the declarant induced the plaintiff to act upon the misrepresentation; (5) that the plaintiff relied upon the misrepresentation; and (6) that the misrepresentation caused injury to the plaintiff.

*Flegles, Inc. v. TruServ Corp.*, 289 S.W.3d 544, 549 (Ky.2009). A claim of *negligent* misrepresentation "requires proof by clear and convincing evidence of a material representation that a defendant knew, or should have known, to be false." *Aesthet-*

*ics in Jewelry, Inc. v. Brown, ex rel. coexecutors,* 339 S.W.3d 489, 495 (Ky.App.2011) (*citing Presnell Const. Managers, Inc. v. EH Const., LLC,* 134 S.W.3d 575, 581 (Ky. 2004)).

While the proof for the two claims is different, both nonetheless require that the alleged misrepresentation must have been false. In this case, Collins and Land failed to establish a false representation. The Kentucky Millionaire ticket includes a statement that "ticket purchasers are bound by Kentucky law and the rules and regulations of [KLC]." Rules and Regulations are available upon request; the phone number for KLC is listed on the ticket. The Rules and Regulations for Kentucky Millionaire vary only slightly from the call-out in listing the prizes available—from $20 up to $1,000,000. Although $20 is lower than the $25 announced in the call-out, there were also several $5000, $10,000, and $25,0000 prizes which far exceeded the high number of $1000 that was mentioned in the call-out banner as an implied ceiling. The Rules and Regulations also state that the total prize pool for the game was $15,765,600. The distribution of prizes between $25 and $1000 totalled considerably more than the $10,000,000 advertised in the call-out. We cannot agree that this variance, which is *de minimis* in nature, constituted a false representation rising to the level of the element of fraudulent misrepresentation contemplated by *Flegles, supra.*

We also note that in addition to the Rules and Regulations, the record includes several pieces of advertising material that were provided to retailers of Kentucky Millionaire. They displayed prize lists which included the $20 prize. The record does not support the contention of Collins and Land that Kentucky Millionaire was promoted solely and exclusively with a minimum prize of $25.

Construing the evidence in the light most favorable to Collins and Land, the call-out banner arguably **omitted** the prizes below and above the $25–1000 range. However, the tort of negligent misrepresentation requires an **affirmative false statement.** *Giddings & Lewis, Inc. v. Industrial Risk Insurers,* 348 S.W.3d 729, 746 (Ky.2011). (Emphasis added). "Importantly, ... an omission will not do." *Republic Bank & Trust Co. v. Bear, Stearns & Co., Inc.,* 707 F.Supp.2d 702, 714 (W.D.Ky.2010). Therefore, as a matter of law, Appellants' claim of negligent misrepresentation fails.

■ Furthermore, all of the prize information was readily available to Collins and Land. This court has held that when there is a question as to the terms of a sale between two parties, the plaintiff's failure to "take steps to make any further inquiry" supports a court's finding that there were no issues of fact as to fraudulent representation. *Hidden Hills, Inc. v. Parrish,* 28 S.W.3d 864, 866 (Ky.App.2000). Collins and Land failed to take such steps by declining to consult the Rules of Kentucky Millionaire before purchasing a ticket. Therefore, we agree with the trial court that the Appellants have not met the elements of fraudulent misrepresentation.

*Breach of Contract*

■ The Appellants argue that the court erred in granting summary judgment on their claim for breach of contract. The trial court found no Kentucky law that specifically treats the purchase of a lottery ticket as a contract between the purchaser and KLC. Therefore, it declined to find that the Appellants and KLC had a contractual relationship.

We agree with Collins and Land that our Supreme Court has construed the relationship between KLC and a lottery winner as being contractual in nature. *Ken-*

*tucky Lottery Corp. v. Casey,* 862 S.W.2d 888 (Ky.1993). Other jurisdictions have recognized that lottery tickets are contracts between state lotteries and their players as applied to winning entitlements. *Haynes v. Dept. of the Lottery,* 630 So.2d 1177 (Fla.Dist.Ct.App., 1994); *Parsons v. South Dakota Lottery Commission,* 504 N.W.2d 593 (S.D.1993); *Thao v. Control Data Corp.,* 57 Wash.App. 802, 790 P.2d 1239 (1990); *Driscoll v. State of New Jersey, Department of Treasury, Division of the Lottery,* 265 N.J.Super. 503, 627 A.2d 1167 (1993); *Valente v. Rhode Island Lottery Commission,* 544 A.2d 586 (R.I.1988).

■■■ The elements of a contract are: offer and acceptance, full and complete terms, and consideration. *Cantrell Supply, Inc. v. Liberty Mut. Ins. Co.,* 94 S.W.3d 381, 384 (Ky.App.2002). The purchase of a lottery ticket is the acceptance of an offer. *Driscoll v. State,* 627 A.2d at 1171. The terms of the contract are the rules and regulations of the lottery. *Id.*

Collins and Land agreed to the terms of the contract upon purchase of their tickets. We reiterate that the Rules and Regulations of Kentucky Millionaire were unambiguous, consistent, and clear in communicating that the minimum prize was $20. Therefore, there is no genuine issue of fact, and the court did not err when it granted summary judgment to KLC on the breach of contract claim.

### Unjust Enrichment

■■■ Appellants claim that KLC was unjustly enriched because it did not pay the minimum of $25 for winning tickets. There are three elements that a party must meet in order to prevail on a claim of unjust enrichment:

    (1) benefit conferred upon defendant at plaintiff's expense;

    (2) a resulting appreciation of benefit by defendant; and

    (3) inequitable retention of benefit without payment for its value.

*Jones v. Sparks,* 297 S.W.3d 73, 78 (Ky. App.2009).

The Appellants' brief offers no support for this argument. They merely complain that the order of the trial court was condescending in tone toward lottery players. We are not persuaded that KLC was unjustly enriched. The Kentucky Millionaire tickets cost $20 each, and KLC paid the winnings of $20. It did not profit from the sales of the two tickets that are at issue in this case. Collins and Land both chose to purchase the tickets with the understanding that they might not receive any benefit, essentially risking that they would throw away $20 each. Therefore, we cannot conclude that the trial court erred when it granted summary judgment to KLC on the claim of unjust enrichment.

### Class Certification

Appellants argue that the trial court should have granted their motion for class certification. However, the trial court never ruled on the motion. We do not have jurisdiction for claims that do not arise from a final and appealable order. Kentucky Rule[s] of Civil Procedure (CR) 54.01. Therefore, we decline to address the merits of the argument.

The orders of the Jefferson Circuit Court are affirmed.

ALL CONCUR.