RENDERED: MAY 12, 2023; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky
# Court of Appeals

NO. 2022-CA-0543-MR

ANNIE JACOBS; AMANDA
MARTIN; ANGELA SMITH; ANN
HARRIS; ANTHONY BLACKBURN;
BARBARA JEFFRIES; BEATRICE
CALDWELL; BENJAMIN
TOMPKINS; BERNICE MCLAURINE;
BERNITHA KENDRICK; BUD
SLONE; CAMERON ROSZKOWSKI;
CAROLYN TOMPKINS; CATHY
RAWLINGS; CAYE OWENS;
CHRISTINA LYNN; CRYSTAL
TEVIS; DEBRA BANKS; DONNA
RUSSELL; HUBERT HAMM;
JACCQUELYNE BURROUGH; JACK
STICKLER; JAMES CARR; JAMES
FENDER; JAMES W. ADKINS;
JESSICA HENDERSON; JOHN
HUTSEL; JONATHAN GOODWIN;
JOYCE CLARK; KENNETH
ATKINSON; KENNETH SMOOT;
LARRY MURPHY; LEO BEGLEY;
LISA PERSLEY; LOLITTA
WILLIAMS; MALINDA YOUNG;
MARCELLA WRIGHT; MARGARET
EDWARDS; MARK KING; MARTHA
THOMAS; MI KYINE; MICHELLE
GREY; MONICA DAVIDSON;
PAMELA HUMMEL; PHILLIP
LYKINS; PHYLLIS MORGAN;
PRICILLA WALKER; ROLAUNDA

JACKSON; SAMUEL STALLWORTH;
SHIRLEY GARNER; SHIRLEY
WALKER-JONES; STEVEN J.
MCCUBBINS; SYLVIA BOND;
TAMMIE OVERSTREET; TAYNA
CARTER; TONY DIVENS; TONY
DIVENS; TREVOR CAMPBELL;
VERONICA AVERY; VICKIE
CRETH; VICKIE SMITH; WANDA
BURGESS; WANDA ROBINSON;
WILLIAM MARSHALL; AND
YVONNE CARSON                                                       APPELLANTS


                          APPEAL FROM FAYETTE CIRCUIT COURT
v.                        HONORABLE JULIE M. GOODMAN, JUDGE
                                 ACTION NO. 21-CI-00498


KRM WAGERING, LLC;
KEENELAND ASSOCIATION, INC.;
LEXINGTON TROTS BREEDERS
ASSOCIATION, LLC; AND RED
MILE, INC.                                                           APPELLEES


                                        OPINION
                                       AFFIRMING

                                 ** ** ** ** **

BEFORE:  THOMPSON, CHIEF JUDGE; CETRULO AND ECKERLE,
JUDGES.

THOMPSON, CHIEF JUDGE:  Annie Jacobs, *et al*. (hereinafter referred to as

Appellants), appeal from an order of the Fayette Circuit Court which dismissed

their complaint. Appellants request that we reverse the trial court's order and remand for discovery and a trial on the merits. We find no error and affirm.

## FACTS AND PROCEDURAL HISTORY

Before we begin discussing the case at hand, some background information is required regarding the changes in betting on horse races that have occurred over the last decade.

Faced with serious financial challenges and seeking a means to develop new revenue sources, Kentucky's horse racing industry expressed interest in developing the use of devices for wagering on historical horse races. Historical horse races are horse races that have been run sometime in the past at an approved racing facility and are then currently presented in the form of a video display on an electronic device, or terminal, at which individual wagerers may place bets. One such device, similar in appearance to a slot-machine, is a patented product marketed under the name "Instant Racing." The bettor inserts money or its equivalent into the Instant Racing terminal and then chooses a horse identified by a number. The terminal then displays a video recording of the race for the better to watch, or, as the name "Instant Racing" implies, the bettor may forego the excitement of the actual race by opting to see immediately the results of the race and the outcome of his wager. Bettors are not given information from which they might identify the specific time and place of the actual running of the race, or the identity of the horse, but some statistical data regarding the horses is provided for bettors who wish to place their bets with some degree of deliberation.

Proponents of historical horse racing promoted legislation introduced in the 2010 General Assembly that would have explicitly authorized the licensed operation

of such non-traditional forms of horse racing and horse race wagering. However, the proposed legislation was not enacted into law. Following the 2010 legislative session, in July 2010, the [Kentucky Horse Racing] Commission promulgated a series of regulatory changes designed to accommodate the industry's request for expanded wagering by way of "terminals" displaying video recordings of prior races.

These regulatory changes prescribe the rules by which the wagering on historical races shall be conducted, but the most critical element of the regulations is the requirement that all such wagering must be "pari-mutuel." That is so because, pursuant to [Kentucky Revised Statutes (KRS)] 230.215 and KRS 230.361, any wagering on horse racing in Kentucky must be based upon a pari-mutuel system. In other words, the Commission has no authority to license an operation for wagering on horse racing that is not utilizing a form of pari-mutuel wagering.

*Appalachian Racing, LLC v. Family Tr. Foundation of Kentucky, Inc.*, 423 S.W.3d 726, 730-31 (Ky. 2014) (footnotes omitted). Pari-mutuel wagering is "any system whereby wagers with respect to the outcome of a horserace are placed with, or in, a wagering pool conducted by a person licensed or otherwise permitted to do so under State law, and in which the participants are wagering with each other and not against the operator." *Id.* at 737 (citation omitted). In other words, an establishment that permits and facilitates betting on horse racing does not collect any winnings. The establishment only collects the wagers from the bettors, places the wagers into a pool, and then distributes the winnings to the winners.

The Kentucky Supreme Court in *Appalachian Racing* concluded that the regulations created by the Commission for historical race betting were valid and within their statutory remit. *Id.* at 738. The Court, however, remanded to the trial court for additional discovery to determine if the machine wagering on historical racing as contemplated by the appellants was actually pari-mutuel wagering.

Upon remand, the trial court allowed the parties to conduct discovery. After four years of discovery, a hearing was held in 2018 to determine if the wagers made on the instant racing machines constituted pari-mutuel wagering. The trial court ultimately held that the instant racing machines constituted a system for pari-mutuel wagering. The case then returned to the Kentucky Supreme Court in *Family Trust Foundation of Kentucky, Inc. v. Kentucky Horse Racing Commission*, 620 S.W.3d 595 (Ky. 2020).

The Kentucky Supreme Court held that the instant racing machines did not facilitate pari-mutuel wagering.

> Without providing simultaneous access to one historical horse race to the same group of patrons, no pari-mutuel pool can be created among the patrons in which they are wagering among themselves, setting the odds and the payout. The testimony presented to the trial court disclosed that odds are established by the "off odds" as set at the time the horses left the starting gate. In other words, patrons wagering on randomly-generated historical horse races within the Exacta System [of instant racing] are **not** establishing odds with other

patrons wagering on the same race(s). Emphatically, such patrons are not wagering among themselves as required by pari-mutuel wagering.

*Id.* at 601 (emphasis in original) (footnote and citation omitted). "To be clear, pari-mutuel wagering requires that patrons generate the pools based on wagering on the same discrete, finite events. Only in that way are patrons 'wagering among themselves' and setting the odds and the payouts[.]" *Id.* (footnote omitted). The Court also held that the way the machines work, the betting pool is initially funded by the association running the machines and not solely by the bettors as required to be pari-mutuel wagering. *Id.*

The Court further held that

[t]he Commission is charged with regulating pari-mutuel wagering. But without positive legislative action and sanction, it has no authority to create from whole cloth and to approve a wagering pool in which each patron is wagering on a different event or set of events. Such a wagering pool by no means can be considered a pari-mutuel wagering pool in which patrons, as among themselves, are setting the betting odds and payout.

*Id.* at 602-03. The Court ultimately held that any change in the definition of pari-mutuel racing to include the type of wagering done on instant racing machines had to be done by the legislature and not an administrative body or the judiciary. *Id.* at 603.

In response to the *Family Trust Foundation* holding, KRS

230.210(15)[1] was amended to the following:

> "Pari-mutuel wagering," "pari-mutuel system of
> wagering," or "mutuel wagering" each means any
> method of wagering previously or hereafter approved by
> the racing commission in which one (1) or more patrons
> wager on a horse race or races, whether live, simulcast,
> or previously run. Wagers shall be placed in one (1) or
> more wagering pools, and wagers on different races or
> sets of races may be pooled together. Patrons may
> establish odds or payouts, and winning patrons share in
> amounts wagered including any carryover amounts, plus
> any amounts provided by an association less any
> deductions required, as approved by the racing
> commission and permitted by law. Pools may be paid
> out incrementally over time as approved by the racing
> commission[.]

On February 12, 2021, the initial complaint was filed in this case.

Appellants, on behalf of themselves and others similarly situated, sought to recover

gambling losses for wagers placed on the instant racing machines over the past five

years. They argued that the wagers made on the instant racing machines were

illegal because the machines were not systems for making pari-mutuel wagers as

held by *Family Trust Foundation*. Appellants raised three claims for damages:

first, that they were entitled to recovery based on Kentucky's Loss Recovery Act

(LRA) found in KRS 372.020 and KRS 372.040; second, that the Kentucky

Consumer Protection Act (KCPA) found in KRS 367.220(1) entitled them to

---

[1] This amended statute became effective on February 22, 2021.

damages; and third, that they were entitled to damages based on the theory of unjust enrichment.

In January of 2022, Appellees filed a motion to dismiss pursuant to Kentucky Rules of Civil Procedure (CR) 12.02(f), failure to state a claim upon which relief can be granted, and a hearing was held on February 7, 2022. On April 27, 2022, the trial court entered an order dismissing Appellants' complaint. This appeal followed.

## ANALYSIS

As this appeal stems from a motion to dismiss pursuant to CR 12.02(f), we will first set forth our standard of review.

> A motion to dismiss for failure to state a claim upon which relief may be granted "admits as true the material facts of the complaint." So a court should not grant such a motion "unless it appears the pleading party would not be entitled to relief under any set of facts which could be proved[.]" Accordingly, "the pleadings should be liberally construed in the light most favorable to the plaintiff, all allegations being taken as true." This exacting standard of review eliminates any need by the trial court to make findings of fact; "rather, the question is purely a matter of law. Stated another way, the court must ask if the facts alleged in the complaint can be proved, would the plaintiff be entitled to relief?" Since a motion to dismiss for failure to state a claim upon which relief may be granted is a pure question of law, a reviewing court owes no deference to a trial court's determination; instead, an appellate court reviews the issue de novo.

*Fox v. Grayson*, 317 S.W.3d 1, 7 (Ky. 2010) (footnotes and citations omitted).

# LOSS RECOVERY ACT (LRA) CLAIMS

As previously mentioned, Appellants raised three claims in their complaint. We will analyze each in turn. The first is the LRA claim. The LRA, found in Chapter 372 of the Kentucky Revised Statutes, states that gambling contracts and transactions are void. KRS 372.010. KRS 372.020 states:

> If any person loses to another at one (1) time, or within twenty-four (24) hours, five dollars ($5) or more, or anything of that value, and pays, transfers or delivers it, the loser or any of his creditors may recover it, or its value, from the winner, or any transferee of the winner, having notice of the consideration, by action brought within five (5) years after the payment, transfer or delivery. Recovery may be had against the winner, although the payment, transfer or delivery was made to the endorsee, assignee, or transferee of the winner. If the conveyance or transfer was of real estate, or the right thereto, in violation of KRS 372.010, the heirs of the loser may recover it back by action brought within two (2) years after his death, unless it has passed to a purchaser in good faith for valuable consideration without notice.

KRS 372.040 states:

> If the loser or his creditor does not, within six (6) months after its payment or delivery to the winner, sue for the money or thing lost, and prosecute the suit to recovery with due diligence, any other person may sue the winner, and recover treble the value of the money or thing lost, if suit is brought within five (5) years from the delivery or payment.

These two statutes are the methods of recovery Appellants are using to try and recoup gambling losses from the instant racing machines during the time

they were not pari-mutuel wagering systems. While wagers made on pari-mutuel racing are legal in Kentucky pursuant to Chapter 230 of the Kentucky Revised Statutes, Appellants claim that because the instant racing machines were held to not be pari-mutuel wagering systems, all bets made on those machines were illegal and void.

The trial court held that KRS 372.005 and KRS 230.210(15) preclude recovery in this instance. KRS 372.005[2] states that "[t]he terms and provisions of this chapter do not apply to betting, gaming, or wagering that has been authorized, permitted, or legalized, including, but not limited to, all activities and transactions permitted under KRS Chapters 154A, 230, and 238." As previously mentioned, KRS Chapter 230 concerns pari-mutuel wagering and that chapter allows the Commission to promulgate rules to regulate pari-mutuel wagering. The trial court held that the Commission authorized and permitted Appellees to operate instant racing machines for the purposes of pari-mutuel wagering. The court also held that even though those machines were later found to be illegal, they were nonetheless authorized by the Commission. The court held that this authorization was sufficient for KRS 372.005 to apply.

We agree with the trial court. The legislature permitted the Commission to regulate pari-mutuel wagering and *Appalachian Racing*, *supra*,

---

[2] This was referred to as the safe harbor provision during the trial court proceedings.

permitted the Commission to regulate pari-mutuel wagering on historical racing via instant racing machines. KRS 372.005 does not require that the wagering on pari-mutuel racing be legal. It requires that it be "authorized, permitted, **or** legalized[.]" *Id.* (emphasis added). The Commission was permitted to authorize the instant racing machines; therefore, KRS 372.005 applies and Appellants cannot recover under the LRA.

Furthermore, KRS 230.210(15), the current definition of pari-mutuel wagering, also precludes Appellants' recovery under the LRA. The current definition of pari-mutuel wagering includes the type of wagers made on the instant racing machines. The definition also states that it is "any method of wagering **previously** or hereafter approved by the racing commission[.]" *Id.* (emphasis added). The trial court held that the word "previously" made the definition retroactive. The court believed that the retroactive definition, in conjunction with KRS 372.005, made all previous wagers on the instant racing machines authorized, permitted, and legal.

Appellants argue that the new definition of pari-mutuel wagering is not retroactive because it was not expressly deemed so. We agree with the trial court and disagree with Appellants. KRS 446.080(3) states that "[n]o statute shall be construed to be retroactive, unless expressly so declared." "Though it is clear that the General Assembly must expressly manifest its desire that a statute apply

retroactively, magic words are not required. What is required is that the enactment make it apparent that retroactivity was the intended result." *Baker v. Fletcher*, 204 S.W.3d 589, 597 (Ky. 2006) (footnote and citation omitted). We believe that the "previously . . . approved by the racing commission" language is sufficient to make this statute retroactive. The statute is clearly intending to make the previous authorizations for pari-mutuel wagering on the instant racing machines legal under the new pari-mutuel wagering definition. While the *Family Trust Foundation* case may have held that wagers made on the instant racing machines were not pari-mutuel wagers, the new definition of pari-mutuel wagering made those wagers authorized, permitted, and legal. The retroactive definition of pari-mutuel wagers, read together with KRS 372.005, precludes Appellants from recovering.

## KENTUCKY COMMERCE PROTECTION ACT (KCPA)

We will now address Appellants' claim regarding the KCPA. The KCPA can be found in Chapter 367 of the Kentucky Revised Statutes. Specifically, Appellants relied on KRS 367.220(1). KRS 367.220(1) states:

> Any person who purchases or leases goods or services primarily for personal, family or household purposes and thereby suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment by another person of a method, act or practice declared unlawful by KRS 367.170, may bring an action under the Rules of Civil Procedure in the Circuit Court in which the seller or lessor resides or has his principal place of business or is doing business, or in the Circuit Court in which the purchaser or lessee of

-12-

goods or services resides, or where the transaction in question occurred, to recover actual damages. The court may, in its discretion, award actual damages and may provide such equitable relief as it deems necessary or proper. Nothing in this subsection shall be construed to limit a person's right to seek punitive damages where appropriate.

KRS 367.170 states: "(1) Unfair, false, misleading, or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful. (2) For the purposes of this section, unfair shall be construed to mean unconscionable."

The trial court held that there was no evidence that Appellees were engaged in any unfair or deceptive practices. In fact, Appellees, along with others, initiated the *Appalachian Racing* case in order to determine if the Commission's historical racing regulations were lawful. Furthermore, the court held that because Appellees were operating under the safe harbor provision in KRS 372.005, there can be no deceptive or unconscionable acts.

We agree with the trial court. Appellants were not deceived into making these wagers and the provisions of the safe harbor statute make the wagers legal. As there was no deception or unconscionable acts, there can be no recovery under the KCPA.

Furthermore, we do not believe gambling falls under the KCPA. The KCPA covers the purchase or leasing of goods and services. Appellants argue that providing the opportunity for gambling is a service. The case of *Collins v.*

*Kentucky Lottery Corporation*, 399 S.W.3d 449 (Ky. App. 2012), suggests otherwise. In *Collins*, the Kentucky Supreme Court held that the purchase of a lottery ticket was not a service because it "does not create any ongoing contractual relationship between [the Kentucky Lottery Corporation (KLC)] and the player. It is merely a game of chance resulting in a temporary and ephemeral association between the KLC and the purchaser of the ticket." *Id.* at 453. While the trial court in this case did not discuss this issue, we believe it also supports our conclusion that the KCPA does not apply. Like the lottery, wagering on horse races is a game of chance and there is no ongoing relationship between the bettor and the entity taking the wagers.

## UNJUST ENRICHMENT

Appellants' final claim is unjust enrichment. "For a party to prevail under the theory of unjust enrichment, they must prove three elements: (1) benefit conferred upon defendant at plaintiff's expense; (2) a resulting appreciation of benefit by defendant; and (3) inequitable retention of benefit without payment for its value." *Jones v. Sparks*, 297 S.W.3d 73, 78 (Ky. App. 2009) (citation omitted). The trial court held there was no unjust enrichment because there was no inequitable retention. We agree. Appellants knew they were gambling and could lose their money. Furthermore, the instant racing machines were authorized and later made legal by the retroactive application of the current pari-mutuel wagering

-14-

definition. Appellants gambled and lost; this is not unjust enrichment. *See*

*Collins*, 399 S.W.3d at 455.

## **CONCLUSION**

Based on the foregoing, we affirm the judgment of the trial court. Appellants' claims are precluded by law and there is no set of facts which would entitle them to relief.


ALL CONCUR.

BRIEFS AND ORAL ARGUMENTS
FOR APPELLANTS:

Andre F. Regard
Lexington, Kentucky

*AMICUS CURIAE* BRIEF FOR
CHURCHILL DOWNS
INCORPORATED:

Bethany A. Breetz
Phillip W. Collier
Chadwick A. McTighe
Jeffrey S. Moad
Louisville, Kentucky

BRIEF FOR APPELLEES KRM
WAGERING, LLC AND
KEENELAND ASSOCIATION,
INC.:

Steven B. Loy
Anthony J. Phelps
Lexington, Kentucky

Kathryn S. Beck
Louisville, Kentucky

BRIEF FOR APPELLEES KRM
WAGERING, LLC; LEXINGTON
TROTS BREEDERS
ASSOCIATION, LLC; AND RED
MILE, INC.:

Robert E. Maclin, III
Preston W. Worley
Brittany Deskins
Lexington, Kentucky

ORAL ARGUMENTS FOR
APPELLEES KRM WAGERING,
LLC AND RED MILE, INC.:

Steven B. Loy
Lexington, Kentucky

Robert E. Maclin, III
Lexington, Kentucky