RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 24a0101p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

ANTHONY MATTERA; BRAD KENT; WILLIAM ADAMS;
MARK DAVIS; MATT MILLIGAN; STEVEN J. BROWN;
JAOL JOHNSON; RONALD GREENER; BRADFORD JETT;
MARION REID; SHAWN TIGNOR; WHITNEY TIGNOR;
KEVIN SIDLE; CHARLES HOLLOM; PATRICK A.
DICOCCO; BRIAN WELLS; ROGER THOMAS; TIM A.
WOMACK; STEVEN LAIBSTAIN,

        *Plaintiffs-Appellants*,

    *v.*

ROBERT A. BAFFERT; BOB BAFFERT RACING, INC.;
CHURCHILL DOWNS, INC.,

        *Defendants-Appellees*.

No. 23-5750

———————————

Appeal from the United States District Court for the Western District of Kentucky at Louisville.
No. 3:22-cv-00156—David J. Hale, District Judge.

Argued: March 19, 2024

Decided and Filed: May 2, 2024

Before: COLE, CLAY, and BLOOMEKATZ, Circuit Judges.

———————————

## COUNSEL

**ARGUED:** William D. Nefzger, BAHE, COOK, CANTLEY & NEFZGER, Louisville, Kentucky, for Appellants. Michael D. Meuser, MILLER GRIFFIN & MARKS, P.S.C., Lexington, Kentucky, for the Baffert Appellees. Jeffrey S. Moad, STITES & HARBISON, PLLC, Louisville, Kentucky, for Appellee Churchill Downs. **ON BRIEF:** William D. Nefzger, BAHE, COOK, CANTLEY & NEFZGER, Louisville, Kentucky, for Appellants. Michael D. Meuser, Elizabeth C. Woodford, MILLER GRIFFIN & MARKS, P.S.C., Lexington, Kentucky, for the Baffert Appellees. Jeffrey S. Moad, Chadwick A. McTighe, Alisa Micu, STITES & HARBISON, PLLC, Louisville, Kentucky, for Appellee Churchill Downs.

———————————

**OPINION**

———————————

COLE, Circuit Judge.　Thoroughbred racehorse Medina Spirit finished first in the 2021 Kentucky Derby.　Nine months later, the Kentucky Horse Racing Commission's stewards disqualified Medina Spirit due to a failed post-race drug test.　Anthony Mattera made wagers that would have won under the new order of finish after Medina Spirit's disqualification.　But under Kentucky law, only the first order of finish marked "official" counts for wagering purposes. Mattera and eighteen other bettors sued the racetrack, Churchill Downs, Inc., and Medina Spirit's trainers, Robert Baffert, and Bob Baffert Racing, Inc.　The district court granted the defendants' motions to dismiss and denied the plaintiffs leave to amend the complaint.　We affirm.

I.

Churchill Downs hosts the Kentucky Derby, the first race in thoroughbred horse racing's "Triple Crown."　Churchill Downs administers pari-mutuel wagering on the Derby.　Pari-mutuel wagers differ from ordinary wagers.　Rather than betting against the racetrack, each bettor bets against all other bettors.　Bettors stand to win a share of the total pool of money wagered.　The payout for each winning wager is determined by dividing the pools based on a set formula.　After the Kentucky Horse Racing Commission's appointed stewards declare the race "official," bettors "exchange their winning ticket for the money due to them."　(Compl., R. 1-1, PageID 25–26, 28, ¶¶ 85, 94, 96.)　As compensation for administering the wagers, the racetrack receives the "takeout," a fixed percentage of the money wagered.

Robert Baffert and Bob Baffert Racing, Inc. (the Baffert Defendants) trained Medina Spirit for the 2021 Kentucky Derby.　The Baffert Defendants have a publicly-available record of horse racing medication violations.　Less than two months before the 2021 Kentucky Derby, the Kentucky Horse Racing Commission disqualified a different Baffert-trained horse, Gamine, from a prior race at Churchill Downs because Gamine tested positive for betamethasone. Betamethasone is a corticosteroid used to treat inflammation in horses.　It can act as a

performance-enhancing drug and can mask lameness and pain, jeopardizing horse and rider safety.  For this reason, betamethasone is allowed for therapeutic purposes, but its permissible use is limited in the two weeks before a race.

Medina Spirit crossed the finish line first in the 2021 Kentucky Derby.  The stewards marked the official order of finish for pari-mutuel wagering purposes as follows: Medina Spirit, Mandaloun, Hot Rod Charlie, Essentially Quality, O Besos, and then Midnight Bourbon.  Churchill Downs paid out wagers based on that order, as required by Kentucky regulations.  Then, in post-race testing, Medina Spirit tested positive for betamethasone.

On February 21, 2022, more than nine months after the race, the stewards disqualified Medina Spirit.  Their ruling redistributed prize money to horse owners based on a new order of finish: Maundaloun, Hot Rod Charlie, Essential Quality, O Besos, and Midnight Bourbon, followed by thirteen others.  Amr. F. Zedan, Stewards Ruling No. 22-0010 (Ky. Horse Racing Comm'n Feb. 21, 2022) (corrected ruling number).  The ruling stated, "Pari-mutuel wagering is not affected by this ruling." *Id.*  Churchill Downs did not pay pari-mutuel wagers based on the new order of finish.

Anthony Mattera and the other eighteen individual plaintiffs placed bets that lost based on the first official order of finish.  They would have won their bets if the new order of finish counted for pari-mutuel wagering purposes.

The plaintiffs initiated this putative class action against Churchill Downs and the Baffert Defendants in Kentucky state court.  The plaintiffs brought negligence claims against the Baffert Defendants, and claims for negligence, breach of contract, violation of the Kentucky Consumer Protection Act, and unjust enrichment against Churchill Downs.  The plaintiffs claim they were harmed because their wagers would be winning wagers if the new order of finish counted for wagering purposes.  The plaintiffs seek damages based on "correctly placed and unsettled wagers" for all claims and a permanent injunction based on the Kentucky Consumer Protection Act claim.  (Compl., R. 1-1, PageID 43, ¶¶ 194–95.)

Churchill Downs removed the case to the Western District of Kentucky under the Class Action Fairness Act.  Churchill Downs and the Baffert Defendants then moved to dismiss the

complaint.  The plaintiffs thereupon moved for leave to amend their complaint.  In their proposed amended complaint, the plaintiffs added negligence per se claims against the Baffert Defendants and stated that the "universal duty of care" applies to their negligence claims against all defendants.  The plaintiffs also sought to add claims based on wagers they made on the Derby at Nevada sports books and to expand their proposed class to include similarly situated Nevada bettors.  The district court denied leave to amend the complaint as futile.  The district court then granted the defendants' motions to dismiss.  The plaintiffs brought this appeal.

## II.

The plaintiffs argue that the district court erred when it granted the defendants' motions to dismiss and when it denied leave to amend the complaint.  The plaintiffs' claims all hinge on the theory that they have "unpaid winning wagers."  (Appellant Br. 33.)  But, under Kentucky law governing pari-mutuel wagering, the first official order of finish is final.  Under that order, the plaintiffs lost their bets.  For this reason, the complaint fails to state a claim upon which relief can be granted.  Further, as the plaintiffs' proposed amendment does not cure this flaw, the district court properly denied leave to amend.

## A.

We review de novo an appeal from a dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).  *United Food & Commer. Workers Union-Emp. Pension Fund v. Rubber Assocs.*, 812 F.3d 521, 524 (6th Cir. 2016).  In reviewing such a dismissal, we must accept all well-pleaded factual allegations as true and construe the complaint in the light most favorable to the plaintiffs.  *Id.*  To survive dismissal, the complaint must contain sufficient facts, accepted as true, to "state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim has facial plausibility when the well-pleaded facts "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*

### 1.

The plaintiffs brought negligence claims against the Baffert Defendants and against

Churchill Downs. To state a claim for negligence under Kentucky law, the plaintiffs must allege that (1) the defendants owed the plaintiffs a duty of care; (2) the defendants breached that duty; (3) causation; and (4) damages, i.e., that the plaintiffs suffered an actual injury or harm. *Gonzalez v. Johnson*, 581 S.W.3d 529, 532 (Ky. 2019); *Pathways, Inc. v. Hammons*, 113 S.W.3d 85, 88–89 (Ky. 2003).

The plaintiffs fail to state a claim for negligence because they were not harmed under their sole theory of damages. The plaintiffs argue that Medina Spirit's disqualification "turn[ed] previously losing wagers . . . into winning wagers." (Appellant Br. 29.) They "claim damages in the form of unpaid winning wagers completely and solely due to the new official order of finish" after Medina Spirit's disqualification. (Appellant Br. 33.) "Without that, they have no damages claim to make because they would have no winning wagers." (*Id*.) In their reply, the plaintiffs define their argument with greater specificity:

> For the avoidance of doubt, and as the master of their own Complaint:
>
> - Appellants contend that based on the *new* official order of finish, they hold correctly placed and unsettled wagers;
>
> - Appellants do *not* contend that they would have won their wagers had Medina Spirit not raced. They contend they now hold correctly placed and unsettled wagers because he raced and became disqualified due to Appellees' actions or inactions; and
>
> - In other words, but for Appellees' actions or inactions, no new official order of finish would exist leaving Appellants with correctly placed and unsettled wagers.

(Reply Br. 5.)

Kentucky administrative regulations govern pari-mutuel wagers on the Derby placed with Churchill Downs. 810 Ky. Admin. Regs. 6:030. These regulations include Kentucky's finality rule. 810 Ky. Admin. Regs. 4:040, § 17. Under the finality rule, the first order of finish marked "official" is the only order that counts for pari-mutuel wagering purposes. 810 Ky. Admin. Regs. 4:040, § 17 (Once the "official sign [is] posted for the race," the "official order of finish for pari-mutuel wagering purposes shall be final, and no subsequent action shall set aside or alter the official order of finish for the purposes of pari-mutuel wagering.") The rules specify that a

subsequent disqualification does not affect wagers. "If a horse is disqualified after a race has been declared official for pari-mutuel payoff and causes revision of the order of finish . . . [t]he pari-mutuel payoff shall not be affected in any way[.]" 810 Ky. Admin. Regs. 4:060 § 7(1). Bettors consent to these rules when they place a bet. *See White v. Turfway Park Racing Ass'n, Inc.*, 909 F.2d 941, 944–45 (6th Cir. 1990), *overruled in part on other grounds*, *Eyerman v. Mary Kay Cosmetics, Inc.*, 967 F.2d 213, 217 n.4 (6th Cir. 1992).

A subsequent change in the order of finish may affect the purse and the history books, but it will not impact pari-mutuel wagering. Under this system, a pari-mutuel wager placed on the Kentucky Derby is a specific prediction of how the horses will be ordered *as determined by the official order of finish for pari-mutuel wagering purposes*. A bet is not correctly placed and cannot become correctly placed if it does not match *that* order. As the plaintiffs state in their complaint, "on race day, races are really only official as it concerns horseplayers who wager." (Compl., R. 1-1, PageID 32, ¶ 122.)

Further, the plaintiffs concede that a court cannot alter the official order of finish, and they "do not seek to challenge the official order of Derby 147 or ask any court to determine the winner of the race—something a court cannot do." (Reply Br. 10.) Yet the plaintiffs' argument asks us to replace the official order of finish for pari-mutuel wagering purposes with another order of finish. The finality rule bars this challenge. 810 Ky. Admin. Regs. 4:040, § 17 ("no subsequent action shall set aside or alter the official order of finish for the purposes of pari-mutuel wagering"); *see also White*, 909 F.2d at 943 (affirming the district court's holding that "the Kentucky Rules of Racing, by making the steward's determination of the official order of finish final as to the pari-mutuel payoff, foreclosed [a bettor's] action against the racetrack").

After the order is marked official, neither the stewards nor the courts can turn a losing wager into a winning one. Medina Spirit's disqualification occurred after the stewards marked the order official, so the new order of finish had no impact on the plaintiffs' wagers. The ruling disqualifying Medina Spirit and setting forth the new order of finish confirms that there is no exception here: "Pari-mutuel wagering is not affected by this ruling." Amr. F. Zedan, Stewards

Ruling No. 22-0010 (Ky. Horse Racing Comm'n Feb. 21, 2022).**[1]**

The plaintiffs expressly waive any other argument for damages. (Appellant Br. 33; Reply Br. 5.) As the plaintiffs fail to allege damages, the district court properly dismissed their negligence claims.

2.

The plaintiffs brought additional claims against Churchill Downs for breach of contract, violation of the Kentucky Consumer Protect Act, and unjust enrichment. These claims also fail because the plaintiffs do not have "correctly placed and unsettled wagers."

Under Kentucky law, the plaintiffs must allege damages to state a breach of contract claim. *Crestwood Farm Bloodstock v. Everest Stables, Inc.*, 751 F.3d 434, 441 (6th Cir. 2014); *see also Metro Louisville/Jefferson Cnty. Gov't v. Abma*, 326 S.W.3d 1, 8 (Ky. Ct. App. 2009). In their contract claims, as in their negligence claims, the plaintiffs allege "damages in the form of unsettled pari-mutuel wagers." (Compl., R. 1-1, PageID 40, ¶ 169.) As discussed above, the plaintiffs' wagers were properly settled at zero when the stewards declared the original order of finish to be official for pari-mutuel wagering purposes. The plaintiffs were not harmed when they were not paid for losing wagers.

Similarly, to state a Kentucky Consumer Protection Act claim, the plaintiffs must allege that they suffered an "ascertainable loss of money or property." Ky. Rev. Stat. § 367.220(1); Ky. Rev. Stat. § 367.170; *see Collins v. Ky. Lottery Corp.*, 399 S.W.3d 449, 452 (Ky. Ct. App. 2012). The plaintiffs suffered no loss of money or property under their sole theory of harm: that they "hold correctly placed and unsettled wagers because [Medina Spirit] raced and became disqualified." (Reply Br. 5.) Their wagers had no value before Medina Spirit's disqualification and still have no value after the disqualification.

To state a claim for unjust enrichment, the plaintiffs must allege "inequitable retention of benefit without payment for its value." *Jones v. Sparks*, 297 S.W.3d 73, 78 (Ky. Ct. App. 2009).

---

**[1]**This ruling may be considered because it is a public record referred to in the complaint and central to the claims. *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 420 (6th Cir. 2008).

The plaintiffs argue that Churchill Downs inequitably "retained the benefit of the wagers without payment for their value under the [new] official order of finish [after Medina Spirit's disqualification]." (Appellant Br. 48.)  Churchill Downs cannot have inequitably retained the wagers without payment for their value because the wagers have no value.

B.

An amendment to a complaint may be properly denied when it is "futile" and "could not withstand a Rule 12(b)(6) motion to dismiss." *Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 420 (6th Cir. 2000).  This court reviews such a denial de novo.  *Riverview Health Inst. LLC v. Med. Mut. of Ohio*, 601 F.3d 505, 512 (6th Cir. 2010).

1.

The plaintiffs' proposed negligence per se claims stem from allegations that the Baffert Defendants violated administrative regulations requiring trainers to protect against the administration of prohibited drugs.  Under Kentucky's negligence per se statute, "[a] person injured by the violation of any statute may recover from the offender such damages as he sustained by reason of the violation" if that person "comes within the class of persons intended to be protected by the statute." *St. Luke Hosp., Inc. v. Straub*, 354 S.W.3d 529, 534 (Ky. 2011) (quoting Ky. Rev. Stat. § 446.070).  A violation of an administrative regulation provides the basis for a claim if the regulation (1) is "consistent with the enabling legislation" and (2) "appl[ies] to the safety of the citizenry." *Id.* at 535.  As a negligence per se claim is merely "a negligence claim with a statutory [or regulatory] standard of care," the plaintiff must allege damages.  *See Wright v. House of Imps., Inc.*, 381 S.W.3d 209, 213 (Ky. 2012) (alteration in original) (quoting *Real Estate Mktg., Inc. v. Franz*, 885 S.W.2d 921, 927 (Ky. 1994)).

Even if the regulations gave rise to a negligence per se claim, the plaintiffs do not allege an injury.  As discussed above, they do not hold "unsettled pari-mutuel wagers."  Their wagers lost and were settled at zero.

As for the negligence claims, the plaintiffs' proposed additions identify the "universal standard of care," but do not correct their failure to allege damages.  As neither the amended

negligence nor negligence per se claims could withstand a motion to dismiss, the district court properly denied leave to amend as futile.

2.

The proposed negligence and negligence per se claims based on Nevada wagers also cannot withstand a motion to dismiss. The plaintiffs cite no authority in the Nevada wagers sections of their opening brief and reply, but simply argue that nothing prevents the citizens or residents of one state from pursuing claims in another. The relevant distinction here is not state citizenship or residency. The plaintiffs placed their Nevada wagers with Nevada casinos "licensed under Nevada law." (Proposed Am. Compl., 15-1, PageID 31, ¶ 159.) Under Nevada gaming regulations, these bets were predictions of the order of finish as determined by the Nevada sports books' procedures. Nev. Gam. Reg. 22.080(4) (effective April 22, 2021 – July 27, 2023). Because the plaintiffs did not predict that order correctly, they lost their Nevada wagers.

Furthermore, even if Medina Spirit's disqualification turned the Nevada bets into winning bets, the plaintiffs would *benefit* from the defendants' conduct that led to the disqualification. In that scenario, any injury would be attributable to the sports books that did not pay out the bets, not the defendants. As the plaintiffs do not allege damages stemming from the defendants' conduct, they cannot state a claim for negligence or negligence per se based on the Nevada wagers.

The plaintiffs also fail to state a claim based on the Nevada wagers for breach of contract, unjust enrichment, or violation of the Kentucky Consumer Protection Act. As alleged in the proposed amended complaint, the plaintiffs did not place their Nevada wagers with Churchill Downs, but with Nevada sports books unconnected to Churchill Downs. The plaintiffs do not—and cannot—argue that their Nevada wagers formed a contract with Churchill Downs. Nor do they argue that their Nevada wagers conferred a benefit on Churchill Downs, as necessary for an unjust enrichment claim. *Jones*, 297 S.W.3d at 78. Additionally, privity of contract is required to state a Kentucky Consumer Protection Act claim. *Skilcraft Sheetmetal, Inc. v. Ky. Mach., Inc.* 836 S.W.2d 907, 909 (Ky. Ct. App. 1992). Because the proposed claims

based on Nevada wagers could not withstand a motion to dismiss, the district court properly denied the amendment as futile.

III.

For the foregoing reasons, we affirm.